**UNITED STATES of America**

v.

**Anthony Francis BENNETT.**

**Crim. No. 72-H-296.**

United States District Court,
S. D. Texas,
Houston Division.

March 26, 1973.

Anthony J. P. Farris, U. S. Atty., and Alvin A. Horne, Asst. U. S. Atty., Houston, Tex., for government.

Dan C. Rhodes, Houston, Tex., for defendant.

## MEMORANDUM OPINION

NOEL, District Judge.

In this case the United States of America charges defendant Anthony Francis Bennett with two counts of intercepting and endeavoring to intercept wire communications in violation of Title 18, United States Code § 2511(1)(a). Defendant plead not guilty and waived a jury trial. The Court heard evidence and arguments of counsel on January 29, 1973. By February 23, 1973 each side had filed post-trial briefs.

### FINDINGS OF FACT

(1) On February 15, 1972, while disconnecting defendant's apartment telephones, John Plake, a Southwestern Bell Telephone Company (Bell) employee, discovered additional, unauthorized telephone company equipment. The equipment included a large box of phone wire, three desk instruments, one push-button instrument, and one call director (a large instrument with numerous buttons). Plake removed the equipment from the apartment and placed it in his service truck.

(2) Upon returning to his apartment, defendant Bennett learned of the equipment's removal. He proceeded to the Bell substation, searched the company vehicles parked in the lot, and found the truck containing the equipment. He opened the truck, removed the materials and returned to his residence.

(3) Within a few days of regaining the equipment, defendant Bennett connected the call director into the telephone system of a contiguous apartment, then occupied by Swann Reid and Shirley Francis (hereinafter called Reid-Francis) (Count Two). The call director was attached to telephone wires in a common wall.

(4) Through this connection, defendant Bennett could monitor telephone calls made by or to his neighbors. A lighted button on the call director indicated incoming calls. Outgoing calls were not so indicated; only by lifting the receiver could defendant determine if Miss Reid or Miss Francis were making a call. Defendant could and did make telephone calls on his call director through their telephone lines.

(5) Defendant Bennett's telephone service was reinstated in March, 1972. Subsequently, he connected his call director with the telephone system in Pauli Koscloskey's downstairs apartment (hereinafter called Koscloskey) (Count One). This connection operated in the same manner as the Reid-Francis tap, which remained operative throughout this period.

(6) Defendant made and continued his connections without the knowledge or consent of any one living in either of the two apartments.

(7) Before making a call on a tapped line, defendant lifted the receiver and listened to determine if the neighbor was making a call.

(8) On one occasion, Shirley Francis was on the phone when defendant lifted the receiver. Because music was playing in defendant's apartment, Miss Francis detected another's presence on the line. When she commented about the music to the other party, defendant hung up his telephone.

(9) On another occasion, while defendant was talking on the tapped line, Miss Francis attempted to use her telephone. Upon hearing an ongoing conversation, she commented to the parties

to the conversation. She concluded that the "wires were crossed" and hung up.

(10) Defendant claims his purpose in making connection with the Reid-Francis telephone was to obtain service so that he could make his own telephone calls. However, he could not provide a motive for continuing the Reid-Francis tap after reinstatement of his own service. Nor did he explain the Koscloskey connection, made subsequent to reinstatement of his own service.

(11) On the occasion mentioned in Finding of Fact #8, defendant Bennett intercepted a wire communication of Miss Shirley Francis (Count Two).

(12) By connecting into Koscloskey's telephone service, defendant endeavored to intercept wire communications to and from her apartment (Count One).

(13) By attempting to ascertain if conversation was occurring before making calls of his own, defendant Bennett was endeavoring to intercept wire communications to and from the apartments mentioned above (Counts One and Two).

(14) On March 27, 1972, Officers Dennis J. Storemski and E. P. Rivera of the Burglary Division of the Houston Police Department, accompanied by F. O. Bolton, Security Supervisor for Southwestern Bell, went to defendant's office and there arrested him for the theft of the Bell equipment. The officers advised defendant of his rights with the standard statement provided by the Harris County District Attorney and then executed an arrest warrant.

(15) After defendant freely admitted stealing the equipment, Bolton asked defendant if he could recover the equipment. Defendant agreed, indicated it was in his apartment, and suggested they all proceed to the apartment to retrieve the equipment.

(16) The four men traveled in a police car to defendant's residence. Without hesitation or reticence, defendant unlocked the front door and indicated where the equipment was located. When Bell employees discovered the several connections, defendant Bennett volunteered that the lines were hooked to two telephones in nearby apartments. Bennett later gave the numbers of those telephones to a company employee.

(17) The search of defendant's apartment during which the illegal connections were discovered, resulted from a voluntary suggestion made by defendant. Neither the police officers, nor Bell employees coerced defendant into allowing a search.

## CONCLUSIONS OF LAW

█ (1) The Court concludes on two separate theories that defendant Anthony Francis Bennett endeavored to intercept communications made over a telephone in Pauli Koscloskey's residence as charged in Count One.

a) Defendant's connection to her telephone service, made after reinstatement of his own service, was without justification. The Court infers that the connection was made for purposes of interception.

b) The statute defines "intercept" to be the aural acquisition of the contents of any communication. 18 U.S.C. § 2510(4). Contents is defined to include any information concerning the existence of the communication. 18 U.S.C. § 2510(8). By raising the receiver to his ear, defendant was endeavoring to detect the existence of wire communications on the Koscloskey line.

(2) Defendant Anthony Francis Bennett intercepted and endeavored to intercept wire communications made over a telephone in Swann Reid and Shirley Francis' residence as charged in Count Two.

a) Regardless of his stated objective, the incident mentioned in Finding of Fact #8 was an interception proscribed by the statute.

b) As discussed above, by his method of making calls on the Reid-Francis line, defendant endeavored to intercept wire communications being made by the apartment occupants.

█ (3) Defendant argues that the government has failed to prove an essen-

tial element of the charge; to wit, that Southwestern Bell Telephone Company is a common carrier engaged in providing or operating facilities for the transmission of interstate or foreign communications as defined in 18 U.S.C. § 2510(1) and 47 U.S.C. § 153(h). Defendant claims the right to an acquittal citing United States v. Blattel, 340 F. Supp. 1140 (N.D.Iowa, 1972). Although that case holds as defendant indicates, this Court finds its decision neither authoritative nor persuasive. Compare, United States v. Carroll, 337 F.Supp. 1260 (D.D.C.1971). When Bell was mentioned during the trial, the Court recognized that the statute was intended to cover that company's equipment. Southwestern Bell Telephone Company is clearly a common carrier under 18 U. S.C. § 2510(1) and 47 U.S.C. § 153(h).

■ (4) The retrieval of the Bell equipment, during which the illegal connections were discovered, was a valid search under Texas law and was not constitutionally defective.

(5) Defendant claims that the absence of specific warnings of Fourth Amendment rights taints defendant's consent to the search. Defendant also contends that the government has failed to negate the possibility that defendant was coerced into consenting.

A number of recent Texas cases have upheld searches to which the individual consented without instruction on his right to refuse consent. E. g., Marshburn v. Texas, 491 S.W.2d 663 (Tex.Cr. App., 1973); Clark v. Texas, 483 S.W.2d 465 (Tex.Cr.App., 1972). Because Texas Code Crim.Proc.Ann. art. 38.23 (1965) excludes evidence obtained in violation of constitutional rights, these cases evidence the Texas court's view, not only of Texas law, but also of the Fourth Amendment.

■■ More authoritative on the constitutional issue are the decisions of the United States Court of Appeals for the Fifth Circuit which also hold that specific instruction on Fourth Amendment rights is not necessary to validate a con-

sensual search. E. g., United States v. McCann, 465 F.2d 147 (5th Cir. 1972). By a per curiam decision in Perkins v. Henderson, 418 F.2d 441 (5th Cir. 1969), the Court refused to disturb the District Court's finding that the defendant who was not apprised of his Fourth Amendment rights had not voluntarily and intelligently waived those rights. Nonetheless, subsequent decisions have not interpreted Perkins "to require that an officer state affirmatively that he will not search if permission is refused, or that he cannot and will not search without consent." United States v. Resnick, 455 F.2d 1127, 1133 (5th Cir. 1972). Under the Fifth Circuit's view, the Court must consider the totality of the circumstances, including the individual's knowledge of his rights, in determining whether the defendant's consent was valid. This view of the Fourth Amendment comports with that taken by the majority of the other Circuits. E. g., United States v. Noa, 443 F.2d 144 (9th Cir. 1971).

■ The evidence, including defendant's testimony, clearly and affirmatively demonstrates both the absence of coercion by the officers and presence of consent by defendant. Defendant's pretrial affidavit to the contrary was strongly rebutted by witness testimony and virtually repudiated by defendant.

Furthermore, it is doubtful that, under the circumstances, a specific Fourth Amendment warning would have affected defendant's willingness to allow the search. Defendant did not know of the criminal ramifications of his wire connections. This ignorance would not have been affected by the warning which defendant now seeks.

Regardless of the effect of additional warnings, the Court holds such warnings unnecessary and holds that under the circumstances, the search of defendant's apartment was free of constitutional defect.

The foregoing constitutes the Court's findings of fact and conclusions of law. To the extent that any of the findings

of fact constitute conclusions of law, they are adopted as such. To the extent that any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.