**UNITED STATES of America**

v.

**Larry Emerson BURROUGHS and Harold Eugene Guerry.**

**Crim. No. 73-538.**

United States District Court,
D. South Carolina,
Florence Division.

Aug. 2, 1974.

---

Marvin Smith, Asst. U. S. Atty., for the government.

John C. Lindsay, Bennettsville, S.C., Henry Hammer, Columbia, S.C., for defendants.

## ORDER ON DEFENDANTS' MOTION FOR JUDGMENT OF ACQUITTAL, AND, OR IN THE ALTERNATIVE, PETITION FOR A NEW TRIAL

HEMPHILL, District Judge.

Defendants are management employees of J. P. Stevens & Co., a large textile corporation with office and plants throughout the Southeast. A finishing plant of the company in Wallace, South Carolina is known as the Delta plant.

Sometime during the month of November, 1972, organizers from the Textile Workers Union of America (T.W.U. A.) attempted to unionize the employees of the Delta plant. During the progress of this effort, the assigned organizers registered at the Wallace Motor Court, across from the target plant.

During the course of the organizing campaign in January, 1973, one of the organizers, Alfred Motley, reported that a "dirty trick" had been committed by the company, by "bugging" his motel room.

Following an investigation by the F. B.I., defendants were charged by the grand jury, on October 17, 1973, with violation of 18 U.S.C. § 2 and § 2511(1)(b)(i).[1] The indictment was dismissed [2] and the United States Attorney charged defendants by information on December 10, 1973 with violation of 18 U.S.C. § 2511 (1)(a).[3] The information charged:

Commencing on or about the 1st day of January 1973, the exact date to the United States Attorney being unknown, and continuing thereafter to and including the 31st day of January 1973, in the District of South Carolina, LARRY EMERSON BUR-

---

[1]. 18 U.S.C. § 2511. Interception and disclosure of wire or oral communications prohibited.

(1) . . . any person who—

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any *oral* communication when—
(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in *wire* communication ; . . .

shall be fined not more than $10,000 or imprisoned not more than five years or both.

[2]. This indictment, which was dismissed and for which an information was substituted after written endeavor, read as follows:
THE GRAND JURY CHARGES:
That on or about the 1st day of January, 1973, and continuing up to on or about the 31st day of January, 1973, in the District of South Carolina, LARRY EMERSON BUR-

ROUGHS and HAROLD EUGENE GUERRY unlawfully, knowingly and willfully did use and endeavor to use an electronic device to intercept oral communications between individuals then present in certain rooms in the Wallace Motel, Wallace, South Carolina, said device being affixed to, and otherwise transmitting a signal through, wire, cable and other like connection used in wire communications, and the above-named defendants aided and assisted each other in the commission of the aforesaid act, in violation of Title 18, United States Code, Sections 2511(1)(b)(i) and 2.

[3]. 18 U.S.C. § 2511. Interception and disclosure of wire or oral communications prohibited
(1) . . . any person who—
(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or *oral* communication ;

shall be fined not more than $10,000 or imprisoned not more than five years or both.

ROUGHS and HAROLD EUGENE GUERRY unlawfully, knowingly and wilfully did intercept, endeavor to intercept, and procure other persons to intercept and endeavor to intercept, wire and oral communications made and sent during such period by and between individuals in certain rooms at the Wallace Motel, Wallace, South Carolina, and said defendants did aid, abet and assist one another in the commission of the aforesaid acts, in violation of the provisions of Title 18, United States Code, Section 2511(1)(a), and Section 2.

At the trial held in Greenville, South Carolina, December 10–14, 1973, the United States Attorney attempted to prove that Burroughs, who admitted his presence at the motel during the time in question, endeavored to intercept oral communications made in the organizer's room by converting the telephone into a listening device. As to defendant Guerry, who the government admitted was not present at the motel during the time in question, the government attempted to prove that he solicited or procured others to endeavor to intercept oral communications made in the organizer's room. Defendants' alibi was that Guerry had received an anonymous telephone call informing him that the union would "bug" its own phone and blame the company for an unfair labor practice. Defendants testified that Guerry ordered Burroughs to investigate the accuracy of the "tip" before filing a complaint against the union, with the National Labor Relations Board (N.L.R.B.), for conducting unfair labor practices. This was relied upon to explain Burroughs' presence at the motel.

The jury returned a verdict of guilty against both defendants, giving impetus to this motion for judgment of acquittal and, or in the alternative, for a new trial.

### APPLICABLE STATUTES

The federal prohibition against "eavesdropping" is contained in 18 U.S. C. § 2511. Two types of eavesdropping are proscribed. Interception of *wire* communications, i. e., "wiretapping", is illegal under § 2511(1)(a); interception of *oral* communications, i. e., "bugging", is illegal under § 2511(1)(a) and (1)(b). Defendants were convicted of bugging under subsection *(1)(a)*, which lists no specific type of bugging activity proscribed. Subsection (1)(b), lists five types of specific buggings proscribed, enumerated (*i*) through (*v*).

Defendants accept the constitutionality of the federal eavesdropping statute and argue that the construction that the government puts upon the bugging prohibitions are incorrect as a matter of statutory interpretation.

### ISSUES

I. A. IS THE FEDERAL PROHIBITION AGAINST BUGGING IN 18 U.S. C. § 2511(1)(a) LIMITED TO STATE ACTION?

B. IS THE FEDERAL PROHIBITION AGAINST BUGGING IN 18 U.S. C. § 2511(1)(b) LIMITED TO PRIVATE ACTION AFFECTING INTERSTATE COMMERCE?

II. HAS THE GOVERNMENT PROVED ITS CASE THAT DEFENDANTS VIOLATED THE BUGGING PROHIBITION OF 18 U.S.C. § 2511 (1)(a), AS CHARGED?

▆ THE FEDERAL PROHIBITION AGAINST BUGGING IN 18 U.S.C. § 2511(1)(a) COVERS STATE ACTION AND 18 U.S.C. § 2511(1)(b) COVERS PRIVATE ACTION AFFECTING INTERSTATE COMMERCE.

Congress intended to reach both state action and private action in passing the eavesdropping statute, 18 U.S.C. § 2511. This is clear from the Congressional findings which constituted the basis for enacting the Omnibus Crime Control and Safe Streets Act, June 19, 1968, 82 Stat. 212, P.L. 90–351. Title III, § 801(a)(Historical Note following 18 U.S.C. § 2510) stating:

Electronic, mechanical, and other intercepting devices are being used to

overhear oral conversations made in private, without the consent of any of the parties to such communications. The contents of these communications and evidence derived therefrom are being used by *public and private parties* as evidence *in court and administrative proceedings,* and *by persons whose activities affect interstate commerce* . . . . (Emphasis added.)

In § 801(b), Congress continues:

In order to protect effectively the privacy of wire and oral communications, *to protect the integrity of court and administrative proceedings,* and *to prevent the obstruction of interstate commerce,* it is necessary for Congress to define on a uniform basis the circumstances and conditions under which the interception of wire and oral communications, may be authorized, to prohibit any unauthorized interception of such communications, and the use of the contents thereof in evidence in courts and administrative proceedings. (Emphasis added.)

In establishing, as it did, its findings concerning the magnitude of the problem of electronic surveillance and the demonstrated effect such activities have on persons whose activities affect interstate commerce, Congress has sought to make the provisions of Title III a broad and comprehensive scheme of federal control over all interception of communication activity.

It is a violation of § 2511(1)(a) to intercept or to endeavor to intercept any wire or oral communication. There is no direct reference to the interstate or intra-state character of the communication.

■■ As to the wiretapping prohibition under § 2511(1)(a), a "wire communication" is defined in § 2510(1). The subsection states:

"Wire communication" means any communication made in whole or in part through the *use* of facilities for the transmission of communications by the aid of wire, cable, or other like connection *between* the point of origin and the point of reception furnished or *operated by any person engaged as a common carrier* in providing or operating such facilities *for the transmission of interstate or foreign communications.* (Emphasis added.)

Thus, the requisite effect on interstate commerce by wiretapping, either by state action or by private action, is crucial and therefore § 2511(1)(a) is constitutional as a valid exercise of Congressional power under the Commerce Clause. One of the essential elements that the government must prove in a criminal prosecution under § 2511(1)(a) is that a wire communication is used in interstate commerce. This is explicit in the definition of "wire communication" in § 2510(1) and implicit from the legislative history of § 2511(1)(a):

Subparagraph (a) establishes a blanket prohibition against the interception of any wire communication. Since the facilities used to transmit wire communications form part of the interstate or foreign communications network, Congress has plenary power under the commerce clause to prohibit all interception of such communications, whether by wiretapping or otherwise. (Weiss v. United States, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298 (1939)). 2 U.S.Code Cong. & Adm. News, p. 2180 (90th Cong., 2d Sess. 1968).

■■ As to the bugging prohibition under § 2511(1)(a), an "oral communication" is defined in § 2510(2). The subsection states:

"Oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.

The definition is devoid of any indication that the oral communication must be interstate in character. The requisite effect on interstate commerce by bugging is absent and therefore § 2511(1)(a) is constitutional only if the

statute is construed to be limited to state action and not private action.

Indeed, this appears to be the effect intended by Congress. The statute is constitutional when construed in accordance with applicable principles of law which enable Congress, in accordance with the Tenth Amendment, to legislate in reference to those powers expressly or impliedly granted to the United States, and those prohibited to the states.

With reference to the blanket prohibition of subsection (1)(a) against the interception of *oral* communications, Congress recognized that in accordance with the decisions of the Supreme Court in Berger v. New York, 388 U.S. 41, 87 S. Ct. 1873, 18 L.Ed.2d 1040 (1967), and Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), it has the power under the Fourth and Fourteenth Amendments to prohibit interception of such communications *only* when applied against those acting under color of state or federal law. Thus, in order to carry out its intent to proscribe the interception of oral communications against those not acting under color of state or federal law, Congress resorted to its power under the Commerce Clause by enacting subsection (1)(b) which proscribes the interception of oral communications under circumstances which involve or affect interstate commerce.

■ If Congress had intended, as the government contends, that subsection (1)(a) prohibiting the interception of oral communications applies as against persons other than those acting under color of state or federal law, *then subsection (1)(b) would be useless legislation.* Suffice it to say that this court cannot indulge in the presumption that Congress would enact redundant and unnecessary legislation.

That § 2511(1)(a) is limited to state action involving bugging and § 2511(1)(b) covers private action involving bugging with an effect on interstate commerce is further evidenced by the legislative history:

The broad prohibition of subparagraph (a) is also applicable to the interception of oral communications. The interception of such communications, however, does not necessarily interfere with the interstate or foreign communications network, and the extent of the constitutional power of Congress to prohibit such interception is less clear than in the case of interception of wire communications. The Supreme Court has indicated that Congress has broad power to protect certain rights under the Equal Protection Clause of the 14th amendment against private interference. (United States v. Guest, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) (concurring and dissenting opinions).) The *right here at stake—the right of privacy—is a right arising under certain provisions of the Bill of Rights and the due process clause of the 14th amendment.* Although the broad *prohibitions of subparagraph (a)* could, for example, be constitutionally applied to the unlawful *interception of oral communications by persons acting under color of State or Federal law,* see Katzenbach v. Morgan, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), the application of the paragraph to other circumstances could in some cases lead to a *constitutional challenge that can be avoided by a clear statutory specification of an alternative constitutional basis* for the prohibition. [Emphasis added.]

Therefore, in addition to the broad prohibitions of subparagraph (a), the committee has included subparagraph (b), which relies on accepted juridictional bases under the commerce clause and other provisions of the Constitution to prohibit the interception of oral communications.

Subparagraph (i) prohibits any interception through the use of a device linked in any way to the interstate or foreign network of wire communications. Under this provision, for ex-

ample, the use of leased or other telephone lines to transmit signals intercepted by eavesdropping devices is prohibited. The use of such lines in the past has greatly extended the range of eavesdropping devices, since the devices can be made useful in circumstances where intercepted conversations cannot be conveniently monitored from adjacent premises, but must be transmitted to a more distant location. 2 U.S.Code Cong. & Adm. News, pp. 2180–2181 (90th Cong., 2d Sess. 1968).

## THE GOVERNMENT HAS FAILED TO PROVE ITS CASE THAT DEFENDANTS VIOLATED THE BUGGING PROHIBITION OF 18 U.S.C. § 2511(1)(a) AS CHARGED.

■ The type of private action affecting interstate commerce that was intended to be reached by the prohibition against private wiretapping in § 2511(1)(a) and by the prohibition against private bugging in § 2511(1)(b) is alluded to in Senate Report No. 1097 on the Omnibus Crime Control and Safe Streets Act of 1968, Title III. The report states:

The tremendous scientific and technological developments that have taken place in the last century have made possible today the widespread use and abuse of electronic surveillance techniques. As a result of these developments, privacy of communication is seriously jeopardized by these techniques of surveillance. *Commercial and employer-labor espionage is becoming widespread. It is becoming increasingly difficult to conduct business meetings in private.* Trade secrets are betrayed. *Labor and management plans are revealed.* No longer is it possible, in short, for each man to retreat into his home and be left alone. Every spoken word relating to each man's personal, marital, religious, political, or commercial concerns can be intercepted by an unseen auditor and turned against the speaker to the auditor's advantage. 2 U.S. Code Cong. & Adm.News, p. 2154 (90th Cong., 2d Sess. 1968). (Emphasis added).

Defendants were charged and tried, not under subsection (1)(b)(i) but rather under subsection (1)(a) which requires proof, as essential elements of the offense, that defendants intercepted or endeavored to intercept a wire communication as defined by § 2510(1), or that defendants, acting under color of state or federal law, intercepted or attempted to intercept an oral communication as defined by § 2510(2). It is clear from the record that the government failed to prove all of essential elements of the offense as required by law.[4]

### 1. *No State Action Shown.*

The government premises its entire case on the proposition that it has proved that defendants attempted to bug, i. e., endeavored to intercept an oral communication as defined by § 2510(2), in the union organizer's motel room.

This court recognizes that what is involved in this case is private action affecting interstate commerce and not public or private action taken under color of state or federal law. Bugging of the former type is a violation of § 2511(1)(b)(i)–(v); bugging of the latter type, a violation of § 2511(1)(a).

Defendants, being charged only with violating § 2511(1)(a) by information after the charge of violating § 2511(1)(b)(i) by indictment was dismissed, are entitled to acquittal because no state action was proved. Indeed, the government admits that no state action

---

4. The government concedes that it has not proved its case under § 2511(1)(a) that defendants wiretapped, i. e., intercepted or endeavored to intercept a wire communication as defined by § 2510(1), from the union organizer's motel room.

Furthermore, the government concedes that it has not proved its case under § 2511(1)(a) that defendants actually bugged, i. e., intercepted an oral communication as defined by § 2510(2), in the union organizer's motel room.

was involved but counters that none need be proved. The government's position, that the bugging prohibited by § 2511(1)(a) covers state action as well as private action affecting interstate commerce, must be repudiated in view of the specific enumeration of proscribed private action affecting interstate commerce in § 2511(1)(b)(i)–(v).

Assuming arguendo that the § 2511(1)(a) prohibition against bugging includes both state action and private action affecting interstate commerce, the government has failed to prove its case. Defendants offered two grounds for such an alternative finding but only one can be sustained.

2. *Reasonable Expectation of Privacy Shown.*

■ The first alternative ground is that the government failed to prove that Mr. Motley, the union organizer, "exhibited an expectation that [his oral] communication is not subject to interception under circumstances justifying such expectation", as required in the definition of "oral communication" contained in § 2510(2).

This contention cannot stand. The jury apparently drew a reasonable inference from the union organizer's testimony [5] that he, and others with whom he conversed in his motel room had "an expectation that such communication is not subject to interception", especially by the company. That the communications were made in the motel room among union organizers and sympathizers constitute facts showing "circumstances justifying such expectation." The legislative history of the federal eavesdropping statute indicates that privacy is expected for such communications.[6] It is true that the United States Attorney did not ask the union organizer: "Do you expect that your oral communication would not be

5. Trial Transcript, at 23–26, states:
Q. All right, during the months of November and December 1972, and January of 1973, what were your activities generally around the Wallace, South Carolina area?
A. Well, we held meetings. We passed out leaflets. We made house calls, and for quite a length of time, I can't specify the time, but we tried to find a meeting place in Cheraw which would be convenient for the people in the plants to attend meetings. After I had been there for sometime, and gotten acquainted with the town people, and with the committee, and signed people up on the committee, and on cards, they started visiting the room. Especially, after we passed out leaflets, then the committee that had helped us would come back to the room, and we would talk about who refused the leaflets, how many refused the leaflets, how many we passed out, how we thought it was going and try to make an assessment each week. How many cards we had gotten that week, and that type of thing so after I had been there several weeks there were constant visitors to the room especially in the afternoon and evening. Not every day, but at least every week, and several times during the week.
Q. They visited to your room, and you are speaking of your room at the Wallace Motor Court?
A. Right.
Q. In Wallace, South Carolina?
A. Right.
Q. And generally your visitors to the room stayed there for business purposes in connection with the union or for purpose of pleasure?
A. That is correct, sir. Either they were union organizers or people from the plant.
Q. And generally when people came to your room generally, that is, in November and December of 1972 and January of 1973, generally did they come there on business or were these social calls?
A. Always on business. No social activity in that room at all.
\* \* \* \* \*
Q. In December of '72 and January of '73 insofar as meetings of union personnel were concerned, or discussions of union business in Room 24 or Room 23 of the motel, did this occur spasmodically, weekly, daily, or just about how often?
A. Sometimes daily, but always on the weekends the organizers and myself would gather in Room 24, and make up contact cards of the cards we received that week. We would make a record of it so I could take the cards to Charlotte and have a duplicate there. We discussed the number of cards so we could make up our report. Each of us had to report how many cards were signed, the different people seen, their reaction, our opinion of the re-action as to how the program was going.

6. See 2 U.S.Code Cong. & Adm.News, p. 2154, supra.

subject to interception?", but such exactitude of proof is unnecessary.

### 3. *No Effect on Interstate Commerce Shown* [7]

 All that would have to be shown to establish an effect on interstate commerce is that the telephone which was transformed into a listening device was used in interstate commerce.

In United States v. Blattel, 340 F. Supp. 1140 (N.D.Iowa 1972) (a wiretapping and not a bugging case), the federal district judge granted defendant's motion for judgment of acquittal made after a jury verdict of guilty because the government failed to provide the necessary evidence that the facilities in question were furnished by a common carrier and the common carrier was engaged in providing or operating such facilities for the transmission of interstate or foreign communications.

 It is submitted by the government that, contrary to *Blattel*, it is not necessary to submit direct evidence that Southern Bell Telephone & Telegraph Co. is a communications common carrier as defined by § 2510(10), because it is a matter of general knowledge that the Bell system throughout the United States, and in South Carolina in particular, comes within such definition, and that the court should take judicial notice of this fact, citing United States v. Bennett, 358 F.Supp. 580, 583 (S.D.Tex. 1973) (another wiretapping and not a bugging case).

It appears, however, that *Bennett* is distinguishable from *Blattel* because *Bennett* was tried by the district judge whereas *Blattel* was tried before a jury. As pointed out in *Blattel*:

> [W]here judicial notice is taken, the jury must be instructed that they are

to accept the fact noticed as true. Id., 340 F.Supp., at 1142.

This was not done in the instant case and it is now too late. Therefore, the government has failed to prove another essential element of the offense and, as a result, the acquittal is proper.

Thus, it is unnecessary for the court to rule upon defendants' petition for a new trial. The court is not called upon to express its opinion on the guilt or innocence of the accused; no opinion on such issue is to be inferred from this order.

### CONCLUSION

Defendants' motion for judgment of acquittal is granted.

And it is so ordered.

---

7. The entire discussion under this subtitle is somewhat strained because the two relevant cases cited deal with wiretapping under § 2511(1)(a) and not bugging under § 2511(1)(a). The lack of case law under § 2511(1)(a) dealing with bugging involving private action affecting interstate commerce lends further strength to this court's conviction that such bugging is an offense only under § 2511(1)(b) and not under § 2511(1)(a). The comments made in this subtitle more appropriately relate to § 2511 (1)(b)(i) through (v), each subsection of which contains a requirement of: "wire communication", as defined in § 2510(1), or "interstate or foreign commerce".