UNITED STATES of America, Appellant,

v.

Larry Emerson BURROUGHS and Harold Eugene Guerry, Appellees.

No. 74–2018.

United States Court of Appeals, Fourth Circuit.

Argued Nov. 30, 1976.

Decided Oct. 31, 1977.

David J. Kline, Atty., U. S. Dept. of Justice, Washington, D. C. (Mark W. Buyck, Jr., U. S. Atty., and Marvin L. Smith, Asst. U. S. Atty., Columbia, S. C., on brief), for appellant.

John C. Lindsay, Bennettsville, S. C. (Henry Hammer, Columbia, S. C., on brief), for appellees.

Before BOREMAN and FIELD, Senior Circuit Judges, and WIDENER, Circuit Judge.

BOREMAN, Senior Circuit Judge:

Larry Emerson Burroughs and Harold Eugene Guerry, appellees herein, were tried on an information which charged them with violating 18 U.S.C. §§ 2511(1)(a) and 2 by knowingly and willfully intercepting, endeavoring to intercept, and procuring other persons to intercept and endeavor to intercept certain wire and oral communications.[1] After a jury verdict of guilty, the court, upon motion of the defendants, granted a judgment of acquittal. The district court determined that there was a failure of proof of any state action or any action under color of state or federal law in the attempt to intercept the communications. Although no state action was alleged in the information, and the statute in question does not specifically require such state action, the trial court concluded that such an interpretation was necessary to preserve

---

1. The defendants were originally charged in an indictment with violations of 18 U.S.C. §§ 2511(1)(b) and 2. This indictment was dismissed and thereafter, upon an appropriate waiver by the defendants of re-indictment and upon assurances of a speedy trial, the United States filed an information charging defendants with a violation of 18 U.S.C. §§ 2511(1)(a) and 2. Section 2511(1) states in pertinent part:

(1) Except as otherwise specifically provided in this chapter any person who—

(a) willfully intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire or oral communication;

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable or other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

. . . . .

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

the constitutionality of the statute. *United States v. Burroughs*, 379 F.Supp. 736 (D.S. C.1974).

The government filed a notice of appeal from the judgment of acquittal and thereafter the defendants moved that the appeal be dismissed. Concluding that the judgment of acquittal was not properly appealable by the government, we granted defendants' motion and dismissed the appeal. *United States v. Burroughs*, 510 F.2d 967 (4 Cir. 1975) (Table). Thereafter the government filed a petition for rehearing and, based upon a more recent decision of the Supreme Court in *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), we held that the government could appeal the judgment; we then reinstated the appeal. *United States v. Burroughs*, 537 F.2d 1156 (4 Cir. 1976). We now turn to the consideration of the merits of the government's appeal.

Burroughs and Guerry were management employees of J. P. Stevens and Company, a corporation with a textile plant in Wallace, South Carolina. In November 1972 union organizers of the Textile Workers Union of America initiated an attempt to unionize the employees of the Wallace plant. During the organizational drive, union organizers registered at a motel across the street from the plant. Sometime during January 1973, Burroughs and Guerry allegedly arranged to have the telephone instrument in the union organizers' room converted into a listening device so that conversations in that room could be overheard in certain other motel rooms by use of the motel's internal telephone system and with the co-operation of the motel telephone switchboard operator.[2]

One of the union organizers discovered and reported the "bugging" of the motel room and, after an investigation by the FBI, Burroughs and Guerry were charged in an indictment by a federal grand jury with the violation of 18 U.S.C. § 2511(1)(b)(i)—the interception of *oral* communications through the use of a device used in interstate wire communication. After the original indictment was dismissed the United States filed an information charging the appellees with the violation of 18 U.S.C. § 2511(1)(a)—the interception of *oral* or *wire* communications. The jury returned a verdict of guilty but the district court granted defendants' subsequent but timely motion for judgment of acquittal on the ground that the government failed to provide the necessary evidence of a federal nexus in the motel "bugging" operation.

The basis of the government's appeal is its challenge to the district court's assertedly erroneous interpretation of the statute. The government contends that: § 2511(1)(a) does not require a showing that the persons charged were acting under color of state or federal law; § 2511(1)(a) does not require proof of an effect on interstate commerce; and the appellees lack standing to challenge the constitutionality of the statute.

The interception of *wire* communications under § 2511(1)(a)[3] and *oral* communications under § 2511(1)(b)(i)–(iv) specifically require a showing of an effect upon interstate commerce to establish a violation of the statute. However, the interception of

---

**2.** At trial, the government showed only the attempted interception of *oral* communications. The telephone was not rigged in such a way as to permit the interception of *telephone* conversations and could only be used to eavesdrop on the conversation between individuals in the organizers' motel room. Thus this appeal involves only the interception of *oral* communications under § 2511(1)(a).

**3.** Congress specifically limited "wire communication" to include only communications sent through the facilities of a communication common carrier engaged in the transmission of interstate or foreign communications. *United*

*States v. Blattel*, 340 F.Supp. 1140 (N.D.Iowa, 1972). The term "wire communication" is defined in 18 U.S.C. § 2510(1) as:

any communication made in whole or in part through the use of facilities for the transmission of communications by aid of wire, cable, or other like connection between the point of origin and the point of reception furnished or operated by any person engaged as a common carrier in providing or operating such facilities for the *transmission of interstate or foreign communications* . . . . (Emphasis added)

oral communications under § 2511(1)(a) does not specify in statutory language any requirement of a federal nexus to establish a violation of the statute.[4] Because of this absence of jurisdictional language in § 2511(1)(a) as it pertains to oral communications, the district court interpreted this portion of the statute as applying only to persons acting under color of state or federal law. The district judge reasoned that if an effect upon interstate commerce was also a basis for establishing an illegal interception of oral communications under § 2511(1)(a), then this subsection would result in some overlapping of the prohibition established by § 2511(1)(b) and subsection (1)(b) would be "redundant and unnecessary legislation." 379 F.Supp. at 741. Because the government failed to show that Burroughs and Guerry were acting under color of state or federal law, the court granted defendants' motion for judgment of acquittal.

The notion that subsection (1)(a) was enacted to dovetail neatly with subsection (1)(b) rests perhaps on a conception of model legislative process; but all statutes are not models of legislative logic or clarity. "While courts should interpret a statute with an eye to the surrounding statutory landscape and an ear for harmonizing potentially discordant provisions, these guiding principles are not substitutes for congressional lawmaking." *United States v. Bass*, 404 U.S. 336, 344, 92 S.Ct. 515, 521, 30 L.Ed.2d 488 (1971). Subsection (1)(a) is clear and unambiguous—it prohibits *any person* from intercepting wire or oral communications.[5] This subsection complements subsection (1)(b) by punishing a broader class of behavior. Congress' intent is clearly evidenced in the legislative history of the statute:

Subparagraph (a) [of § 2511] establishes a *blanket prohibition* against the interception of any wire communication. . . .

The *broad prohibition* of subparagraph (a) *is also applicable to the interception of oral communications.* The interception of such communications, however, does not necessarily interfere with the interstate or foreign communications network, and the *extent of the constitutional power of Congress to prohibit such interception is less clear than in the case of interception of wire communications.* . . . Although the broad prohibitions of subparagraph (a) could, for example, be constitutionally applied to the *unlawful interception of oral communications by persons acting under color of State or Federal law,* . . . *the application of the paragraph to other circumstances* could in some cases lead to a constitutional challenge that can be avoided by a clear statutory specification of an alternative constitutional basis for the prohibition.

Therefore, *in addition to the broad prohibitions of subparagraph (a)*, the committee has included subparagraph (b), which relies on accepted jurisdictional bases under the commerce clause and other provisions of the Constitution to prohibit the interception of oral communications.

.    .    .    .    .

Taken together, subparagraphs (i) to (v) of subparagraph (b) create an essentially comprehensive ban on the interception of oral communications. The provisions will be applicable to the overwhelming majority of cases involving the unlawful interception of such communications, and it will be unnecessary to rely

---

**4.** The term "oral communication" is defined in 18 U.S.C. § 2510(2) as:

> any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation
> .    .    . .

**5.** 18 U.S.C. § 2510(6) states: " 'person' means any employee, or agent of the United States or

any State or political subdivision thereof, *and any individual*, partnership, association, joint stock company, trust, or corporation .   . .." (Emphasis added)

18 U.S.C. § 2510(4) states: " 'intercept' means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device."

on the *broader prohibition* of subparagraph (a). . . . 2 U.S.Code Cong. & Admin.News, pp. 2180–81, 90th Cong., 2d Sess. (1968) (emphasis added, citations omitted).

■ In our view, this portion of the legislative history indicates that Congress intended subsection (1)(a) to overlap with subsection (1)(b) and that (1)(a) could be applied to persons other than those acting under color of state or federal law who intercepted oral communications. Congress expressed concern for the constitutionality of subsection (1)(a) in "some cases," but it did not limit the subsection's application merely to persons acting under color of state or federal law. Thus the district court's reading of § 2511(1)(a) as it applies to oral communications was overly restrictive.[6]

■ Undeniably, subsections (1)(b)(i)–(iv) are based upon the power of Congress to regulate interstate commerce and require a specific showing of an effect upon interstate commerce. But because subsection (1)(a) does not specify any particular basis for jurisdiction, we are of the opinion that proof of any rational basis would be adequate. *See Perez v. United States*, 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). The essential element is that *some* basis for federal jurisdiction be established at trial.

■ In granting the judgment of acquittal the district judge held that the government failed to present any specific evidence of a federal nexus or to request during trial that the trial court take judicial notice of facts from which some federal nexus might have been found as fact.[7] The government now argues that it is unnecessary to prove a federal nexus in each individual case because once Congress has established a sufficient nexus to legislate, this nexus will be imputed to all violations of the statute. However, Congress has not clearly manifested its intent in this regard. All the other portions of subsections (1)(a) and (1)(b) require a specific showing of federal jurisdiction as an essential element of the offense proscribed by the statute. Only subsection (1)(a) as it applies to the interception of oral communications is silent as to proof of a federal nexus. We conclude that Congress has not "plainly and unmistakably," *United States v. Gradwell*, 243 U.S. 476, 485, 37 S.Ct. 407, 61 L.Ed. 857 (1917), as quoted in *United States v. Bass*, 404 U.S. 336, 348, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971), made it a federal crime for an individual to intercept an oral communication *absent some demonstrated federal nexus*.

To rule otherwise would substantially affect the federal-state balance. The Supreme Court recognized in *Bass, supra*, that:

> Congress has traditionally been reluctant to define as a federal crime conduct readily denounced as criminal by the States. This congressional policy is rooted in the same concepts of American federalism that have provided the basis for judge-made doctrines. See, *e. g., Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) . . . . [W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction. In tradition-

---

**6.** Furthermore, the district court's interpretation of the statute would give two different readings to the same term. Under its interpretation, the term "any person" in § 2511(1) would encompass the entire definition of § 2510(6) (*see* footnote 3, *supra*) if the interception was of a wire communication, but the same term would be limited to persons acting under color of state or federal law if the interception was of an oral communication. There is nothing in the legislative history of the Act to support such a strained and unique statutory reading.

**7.** This court refuses to take judicial notice of the fact that defendants' electronic eavesdropping had an effect on interstate commerce. The district court declined to take judicial notice of the existence of a federal nexus, 379 F.Supp. at 744, and we will not take judicial notice on appeal of an unproven essential element of a criminal offense. The jury was not instructed as to the necessity of finding a federal nexus and we cannot assume that the jury would have arrived at the same verdict had such an instruction been given.

ally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision. 404 U.S. at 349, 92 S.Ct. at 523.

In the instant case, the broad construction urged by the government would render purely local criminal conduct a matter of federal enforcement and would also involve a substantial extension of federal police resources. Absent proof of some federal nexus in each case, § 2511(1)(a) would dramatically intrude upon traditional state criminal jurisdiction.

■ The defendants had standing to challenge the validity of § 2511(1)(a) as applied to them—they have the right to require that the prosecution prove *all* essential elements of the crime with which they are charged and that *all* these elements be submitted to the jury for resolution. Because the trial judge was correct in his determination that a federal nexus is an essential element of the crime charged in the instant case, the district court properly granted the defendants' motion for judgment of acquittal and, accordingly, we affirm the judgment.

*Affirmed.*

## ON MOTION TO VACATE JUDGMENT

Larry Emerson Burroughs and Harold Eugene Guerry (hereafter Burroughs and Guerry) were tried on an information which charged them with violating 18 U.S.C. § 2511(1)(a) and 18 U.S.C. § 2 by knowingly and willfully intercepting, endeavoring to intercept, and procuring other persons to intercept and endeavor to intercept certain wire and oral communications.

After a jury verdict of guilty the district court, upon motion of Burroughs and Guerry, granted a judgment of acquittal based on the ground that there was an additional element of the crime that the government failed to prove. *United States v. Burroughs,* 379 F.Supp. 736 (D.S.C.1974). The Government undertook to prosecute an appeal from the district court's judgment of acquittal and Burroughs and Guerry moved to dismiss the appeal. This court granted the motion and the appeal was dismissed in a per curiam opinion of this court dated February 4, 1975, 510 F.2d 967 (Table).

We concluded that the judgment of acquittal was not appealable by the Government under 18 U.S.C. § 3731 as such appeal would offend the Double Jeopardy Clause of the United States Constitution which prohibits any further prosecution.

Thereafter the United States Supreme Court rendered certain decisions; namely, *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); and *Serfass v. United States,* 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). The Government filed a petition with this court for a rehearing asking that we reconsider our dismissal of its appeal in the light of the Court's decisions and we granted rehearing. We then withdrew our previous opinion and reinstated the Government's appeal, relying primarily upon the Court's decision in *United States v. Wilson, supra,* and stating that we were persuaded by that decision that our earlier dismissal of the appeal was improper. 537 F.2d 1156, March 2, 1976.

The Government's appeal was briefed and was presented on oral argument on November 30, 1976. Decision of the appeal was delayed due to disagreements developing among members of the hearing panel and before reaching a definite conclusion as to the proper disposition of the appeal Burroughs and Guerry, on April 11, 1977, filed their motion to vacate our judgment reinstating the Government's appeal in light of the decision of the Supreme Court of the United States in *United States v. Martin Linen Supply Company,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977).

The Government filed its response to said motion on April 18, 1977. The instant order is being filed simultaneously with the filing of this court's opinion and decision disposing of the Government's appeal from the district court's judgment of acquittal. We

conclude that *Martin Linen Supply Company, supra,* does not require the vacation of our decision which granted the Government the right of appeal or require the reinstatement of our earlier opinion denying that right.

In *Martin Linen Supply, supra,* the district court rendered a judgment of acquittal under Fed.R.Crim.P. 29(c) which was entered after a deadlocked jury was discharged when unable to agree upon a verdict at the criminal contempt trial of certain respondent corporations. The Government appealed the district court's judgments of acquittal pursuant to 18 U.S.C. § 3731, which allows an appeal by the United States in a criminal case "to a court of appeals from a . . . judgment . . of a district court dismissing an indictment . . ., except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution." The United States Court of Appeals for the Fifth Circuit held that no appeal lay under § 3731 from the judgments of acquittal entered by the district court under Rule 29(c), reasoning that since; reversal of the acquittals would enable the United States to try the respondent corporations a second time, the bar of the double jeopardy clause "leads inescapably to the conclusion that no appeal lies from the directed verdict ordered by the court below." *United States v. Martin Linen Supply Company,* 534 F.2d 585, 589 (5 Cir. 1976). The Court affirmed the decision of the court of appeals.

As we pointed out in our opinion in *United States v. Burroughs,* 537 F.2d 1156, 1157 (4 Cir. 1976), the Court in *Wilson* addressed itself to the new Criminal Appeals Act, 18 U.S.C. § 3731, which was enacted as Title III of the Omnibus Crime Control Act of 1970, and determined that Congress intended to allow appeals by the government whenever the Constitution would permit. The Court concluded in *Wilson* that "when a judge rules in favor of the defendant after a verdict of guilty has been entered by the trier of fact, the Government may appeal from that ruling without running afoul of the Double Jeopardy Clause." 420

U.S. 332 at 352–53, 95 S.Ct. 1013 at 1026, 43 L.Ed.2d 232. We further noted that the practical application of the decision in *Wilson* was stated by the Court:

> The jury entered a verdict of guilty against Wilson. The ruling in his favor on the . . . motion could be acted on by the Court of Appeals or indeed this Court without subjecting him to a second trial at the Government's behest. If he prevails on appeal, the matter will become final, and the Government will not be permitted to bring a second prosecution against him for the same offense. If he loses, the case must go back to the District Court for disposition . . . . 420 U.S. 332, at 353, 95 S.Ct. 1013 at 1026, 43 L.Ed.2d 232.

The Court in *Martin Linen Supply* reaffirmed its holding in *United States v. Wilson,* stating as follows:

> where a government appeal presents no threat of successive prosecutions, the Double Jeopardy Clause is not offended. Thus, a postverdict dismissal of an indictment after a jury rendered a guilty verdict has been held to be appealable by the United States because restoration of the guilty verdict, and not a new trial, would necessarily result if the government prevailed. *United States v. Wilson, supra.*

*United States v. Martin Linen Supply Company,* 430 U.S. 564 at 569–70, 97 S.Ct. 1349 at 1354, 51 L.Ed.2d 642 (1977).

The Court explained in *Martin Linen Supply* that because the jury failed to agree on a verdict in that case:

> A successful governmental appeal reversing the judgments of acquittal would necessitate another trial, or, at least, 'further proceedings of some sort, devoted to the resolution of factual issues going to the elements of the offense charged. . . .' *United States v. Jenkins,* 420 U.S. 358, 370, 95 S.Ct. 1006, 1013, 43 L.Ed.2d 250 (1975). Therefore, the present case is not one where the double jeopardy bar to appealability is *automatically* averted. *Martin Linen Supply,* at 569–70, 97 S.Ct. at 1354 (emphasis added).

The instant case stands on a vastly different footing. Because the jury returned a guilty verdict, there is no threat of successive prosecutions. If the Government were to be successful on appeal, this court could order restoration and reinstatement of the guilty verdict. Of course, affirmance of the judgment of acquittal would not expose Burroughs and Guerry to a "second prosecution." In neither event would there be further proceedings in the district court "devoted to the resolution of factual issues going to the elements of the offense charged." Thus, unlike the situation presented in *Martin Linen Supply,* "the double jeopardy bar to appealability is *automatically* averted" in the instant case.

■ The Court in *Martin Linen Supply* also utilized a second test in determining the appealability of a judgment of acquittal. In discussing the basis for the trial judge's ruling the Court stated:

> we have emphasized that what constitutes an 'acquittal' is not to be controlled by the form of the judge's action. . . . Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged. *Martin Linen Supply,* at 571, 97 S.Ct. at 1354-55.

The foregoing indicates the Court's view that if the ruling of the district judge in entering the judgment of acquittal represents the resolution of a factual rather than a legal question the government cannot appeal.

There was little question that the judgments of acquittal entered by the district court in *Martin Linen Supply* were based upon a resolution of factual issues—issues which had been presented to the jury and which the jury was unable to resolve. The Supreme Court stated:

> The District Court plainly granted the Rule 29(c) motion on the view that the

Government had not proved facts constituting criminal contempt. The Court made only too clear its belief that the prosecution was "the weakest [contempt case that] I've ever seen."' In entering the judgments of acquittal, the Court also recorded its view that "the Government has failed to prove the material allegations beyond a reasonable doubt" and that "defendant should be found 'not guilty.'" *Martin Linen Supply,* at 572, 97 S.Ct. at 1355.

In the instant case the trial judge granted the defendants' motion for a judgment of acquittal based on the resolution of a legal issue. After the jury had returned a guilty verdict and was discharged, the judge determined that there was an additional legal element to the crime charged that was necessary to preserve the constitutionality of the statute. 379 F.Supp. 736. Because the Government had not presented any evidence in regard to this additional essential element and the element had not been submitted to the jury, the judge granted defendants' motion for a judgment of acquittal. The district judge was not substituting his own view of evidentiary facts for that of the jury as was done in *Martin Linen Supply,*[1] because the jury had not been charged with respect to the legal element which the judge later held to be essential to establishing a violation of the criminal statute. Since the judge had not instructed the jury on the point that he later determined to be an essential element of the crime, his grant of the judgment of acquittal represents a legal determination despite the fact that he determined also that there was an absence of proof of this essential element. The judge was not "second guessing" the jury on a factual issue; he was making a legal determination that there was an additional essential element of the crime.

---

1. As recited above in *Martin Linen Supply,* the district judge based his judgments of acquittal on the view that "defendant should be found 'not guilty.'" In the instant case the district judge based his judgment of acquittal on the determination of a legal issue as conclusively shown by his statement: "The court is not called upon to express its opinion on the guilt or innocence of the accused; no opinion on such issue is to be inferred from this order." 379 F.Supp. 736, at 744.

The issue presented on appeal is whether the trial judge's reading of the statute is correct—a purely legal issue. This court need not address the factual question of whether the Government presented adequate proof of the additional element even though we agree with the district court's interpretation of the statute. Assuming *arguendo* that the Government *did* prove the additional element at trial that the district court later held was necessary for a valid conviction, the jury was not instructed that it was an element of the crime and we cannot assume that they would have arrived at the same verdict had the jury been so instructed.

■ There was no jury verdict which could be reinstated in *Martin Linen Supply.* The return of the jury's verdict is the vital difference between the instant case and *Martin Linen Supply.* There is no possibility of a "second prosecution" in this case. In allowing the Government's appeal this court is placed in the position where we are confronted with the choice between two legal points of view—either the trial judge was correct in his legal analysis that there is an additional essential legal element to the crime charged and his judgment of acquittal should be affirmed, or the Government is correct in that the jury was properly instructed and had all the essential elements before it and the jury verdict should be restored. We conclude that the grant of a government appeal in this particular instance does not run afoul of either the Double Jeopardy Clause of the United States Constitution or the Supreme Court's recent decision in *Martin Linen Supply.*

Accordingly, appellees' motion to vacate our judgment reinstating the Government's appeal is hereby denied.

WIDENER, Circuit Judge, dissenting.

I would grant the motion. I believe the trial court set aside the verdicts of guilty and entered judgments of acquittal because of insufficiency of the evidence and that this bars re-trial under the double jeopardy clause. I emphasize that this does not detract from my concurrence in the opinion of the court on the merits.