UNITED STATES of America, Plaintiff,

v.

Joe B. ANAYA, and Henry
Zavala, Defendants.

CR F 83–151–EDP.

United States District Court,
E.D. California.

Jan. 23, 1985.

Donald B. Ayer, U.S. Atty., David F. Rodriguez, Asst. U.S. Atty., Fresno, Cal., for plaintiff.

Jacob M. Weisburg, Fresno, Cal., for defendant Joe Anaya.

Roger Spaulding, Fresno, Cal., for defendant Henry Zavala.

## MEMORANDUM DECISION

PRICE, District Judge.

The defendants stand charged in this court in a three-count indictment as follows:

Count 1 alleges that the defendant Anaya willfully procured the defendant Zavala to use and/or endeavor to use an electronic and mechanical device to intercept oral communications between the participants in a closed executive session of the Parlier City Council, in violation of 18 U.S.C. § 2511(1)(b)(ii).

Count 2 alleges that the defendant Zavala willfully used and/or willfully endeavored to use an electronic and mechanical device to intercept the oral communications that are described in Count 1, again a violation of 18 U.S.C. § 2511(1)(b)(ii).

Count 3 charges the defendants jointly with disclosing or endeavoring to disclose to another person the contents of the above-described oral communications, alleged to be a violation of 18 U.S.C. § 2511(1)(c).

Since there was little dispute on the facts, the defendants, through their counsel, and counsel for the United States,

agreed, with the approval of the Court, to dispose of the matter by filing a settled statement of facts upon which the Court would determine the defendants' formal motions to dismiss. The settled statements of facts signed by the parties is as follows:

On or about October 27, 1981, a Parlier City Council executive session took place during the evening hours. This executive session of the City Council was held at 580 Tulare Street, Parlier, California, in the courtroom of the Parlier Justice Court, which then also served as the City Council Chambers. The Parlier Police Department was also located in the same building adjoining the Justice Court/City Council Chambers.

Prior to the commencement of the City Council session referenced to above, a Radio Shack brand FM wireless miniature microphone was surreptitiously taped under the counsel table of the courtroom, which table was also where the City Council sat when in session. The miniature microphone measures $1\frac{3}{4}''$ $\times \frac{3}{4}'' \times \frac{5}{8}''$. It operates on a tunable 88–108 MHz FM band and is powered by a 1.4 volt disc battery. The transmission range of the microphone does not exceed 250 feet.

Before the microphone was taped under the courtroom counsel table, an FM radio with built-in cassette player had been adjusted to somewhere in the middle of the band range to receive transmissions from the microphone. The radio/cassette player was located in the Parlier Police Department. The radio was some 90 to 100 feet from the microphone located under the courtroom table.

The entire City Council session was overheard through the microphone and recorded using the FM radio/cassette player located at the Parlier Police Department adjoining the Parlier Justice courtroom, approximately 90 to 100 feet away.

The government cannot establish there was any radio interference with any radio broadcast or reception as a result of the monitoring and broadcasting of the City Council session utilizing the FM miniature microphone.

The section under which the defendants are here charged was enacted as part of the Omnibus Crime Control and Safe Streets Act of 1968. An extensive legislative history of the entire act is set forth in [1968] 2 *U.S.Code Cong. & Admin.News*, 90th Cong., pp. 2112, et seq.

In considering the statutory scheme, it is critical to consider the statutory definitions applicable to this action, (*see* 18 U.S.C. § 2510):

(2) "oral communication" means any oral communication uttered by a person exhibiting an expectation that such communication is not subject to interception under circumstances justifying such expectation.

(4) "intercept" means the aural acquisition of the contents of any wire or oral communication through the use of any electronic, mechanical, or other device.

(5) "electronic, mechanical, or other device" means any device or apparatus which can be used to intercept a wire or oral communication other than—

(a) any telephone or telegraph instrument, equipment or facility, or any component thereof, (i) furnished to the subscriber or user by a communications common carrier in the ordinary course of its business and being used by the subscriber or user in the ordinary course of its business; or (ii) being used by a communications common carrier in the ordinary course of its business, or by an investigative or law enforcement officer in the ordinary course of his duties;

(b) a hearing aid or similar device being used to correct subnormal hearing to not better than normal;

We now turn to the precise sections under which the defendants are charged:

(1) Except as otherwise specifically provided in this chapter [18 U.S.C. §§ 2510, et seq.] any person who—

(b) willfully uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other device to intercept any oral communication when—

.       .       .       .       .

(ii) such device transmits communications by radio, or interferes with the transmission of such communication, or

.       .       .       .       .

(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection;

The legislative history is notable:

Subparagraph (a) establishes a blanket prohibition against the interception of any wire communication. *Since the facilities used to transmit wire communications form part of the interstate or foreign communications network, Congress has plenary power under the commerce clause to prohibit all interception of such communications, whether by wiretapping or otherwise. (Weiss v. United States, 60 S.Ct. 269, 308 U.S. 321 [84 L.Ed. 298] (1939)).* (emphasis added)

The broad prohibition of subparagraph (a) is also applicable to the interception of oral communications. The interception of such communications, however, does not necessarily interfere with the interstate or foreign communications network, and the extent of the constitutional power of Congress to prohibit such interception is less clear than in the case of interception of wire communications. The Supreme Court has indicated that Congress has broad power to protect certain rights under the Equal Protection Clause of the 14th amendment against private interference. (*United States v. Guest,* 86 S.Ct. 1170, 383 U.S. 745 [16 L.Ed.2d 239] (1966) (concurring and dissenting opinions).) The right here at stake—the right of privacy—is a right arising under certain provisions of the Bill of Rights and the due process clause of the 14th amendment. Although the broad prohibitions of subparagraph (a) could, for example, be constitutionally applied to the unlawful interception of oral communications by persons acting under color of State or Federal law, see *Katzenbach v. Morgan,* 86 S.Ct. 1717, 384 U.S. 641 [16 L.Ed.2d 828] (1966), the application of the paragraph to other circumstances could in some cases lead to a constitutional challenge that can be avoided by a clear statutory specification of an alternative constitutional basis for the prohibition.

Therefore, in addition to the broad prohibitions of subparagraph (a), the committee has included subparagraph (b) which relies on accepted jurisdictional bases under the commerce clause and other provisions of the Constitution to prohibit the interception of oral communications.

.       .       .       .

Subparagraphs (c) and (d) prohibit, in turn, the disclosure or the use of the contents of any intercepted communication by any person knowing or having reason to know the information was obtained through an interception in violation of this subsection. The disclosure of the contents of an intercepted communication that had already become "public information" or "common knowledge" would not be prohibited. The scope of this knowledge required to violate either subparagraph reflects existing law (*Pereira v. United States,* 74 S.Ct. 358, 347 U.S. 1 [98 L.Ed.2d 435] (1954)). A violation of each must be willful to be criminal (*United States v. Murdock,* 54 S.Ct. 223, 290 U.S. 389 [78 L.Ed. 381] (1933)). Each prohibition strikes not only at the prohibited action but also at endeavors. (*Osborn v. United States,* 87 S.Ct. 429, 385 U.S. 323 [17 L.Ed.2d 394] (1966)) and procurements (*Nye & Nissen v. United States,* 69 S.Ct. 766, 336 U.S. 613 [93 L.Ed. 919] (1949)). There is not intent to preempt State law.

[1968] 2 *U.S.Code Cong. & Ad.News* 2180, 2181.

We first turn to the citation of authority upon which Congress rested their presumed authority to legislate in this field. In *Weiss v. United States*, 308 U.S. 321, 60 S.Ct. 269, 84 L.Ed. 298, the defendants were charged with using the mails to defraud, and a conspiracy to so use them. Their conviction was based in part upon the introduction of evidence that had been obtained by wire taps. The government argued that since these interceptions were intrastate messages only, Congress could not have intended to prohibit their interception by federal agents. The Supreme Court disagreed and reversed.

*United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239, was a civil right case. Defendants were indicted for a criminal conspiracy under 18 U.S.C. § 241, which prohibited conspiracy by two or more citizens to injure, oppress, threaten or intimidate any citizen in the free exercise or enjoyment of any right or privilege secured to him by the Constitution and laws of the United States. Fairly read, *Guest* stands for the proposition that the Court which heard Guest was sharply divided on the power of Congress to enact laws in this area. The working plurality in each instance expressed the opinion that Congress was powerless to act, except in those areas where agents of the state were involved, or alternately, the right involved was an area over which Congress had exclusive jurisdiction, such as the right of interstate passage. In the latter instance, the plurality held that interference with such a right could be criminally proscribed by Congress, even though the denial was not the result of state action.

In *Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828, the Court was faced with the question as to whether a particular section applicable to those who had obtained their early education in Puerto Rico overrode contrary provisions of state statutes pertaining to voter eligibility. The Court held that the Voting Rights Act was an appropriate exercise of legislative authority by Congress granted to them under Section 5 of the 14th Amendment. An interesting facet of the decision was the Court's holding that having decided that the section of the Voting Rights Act under review prohibited the application of the state laws as to the group protected by that Act, that the Court need not go further and decide that the state law was *per se* unconstitutional.

It would not appear that the Congressional concern about their power to legislate acts occurring solely in intrastate commerce is answered in any substantial part by the above cases.

A survey of the annotations found in 43 L.Ed.2d, at 871, and the supplement to that volume, contains an exhaustive review of the instances in which the United States Supreme Court has dealt with the individual's right of privacy. A careful reading of those materials indicates that the Court had never specifically addressed the problem at issue here—namely, the right of Congress to legislate broadly to protect the right of privacy of individuals from invasion by other citizens.[1]

In *Gelbard v. United States*, 408 U.S. 41, 92 S.Ct. 2357, 33 L.Ed.2d 179, the Court was dealing with contempt of witnesses before a Federal Grand Jury who refused to comply with Court orders to testify. The refusals were based upon the witnesses' allegations that their interrogations were based upon information obtained by illegal wire taps by federal agents. Although not necessary to the decision, the Court noted:

> Except as expressly authorized in Title III, however, all interceptions of wire and oral communications are flatly prohibited. Unauthorized interceptions and the disclosure or use of information obtained through unauthorized interceptions are crimes, 18 U.S.C. § 2511(1), and

---

1. Here, the defendants were members of the Parlier Police Department and presumably acting in that capacity. If the intercepted communications became the basis of criminal charges against the communicants, a different result would issue.

the victim of such interception, disclosure, or use is entitled to recover civil damages, 18 U.S.C. § 2520.[2]

*Gelbard v. United States,* 408 U.S. at p. 46, 92 S.Ct. at p. 2360.

*United States v. Kahn,* 415 U.S. 143, 94 S.Ct. 977, 39 L.Ed.2d 225 (1974), as did most of the cases in this area, dealt with the validity of application for wire taps. Indeed, at the outset, the Court in *Kahn* observed: "At the outset, it is worth noting what issues are not involved in this case. First, we are not presented with an attack upon the constitutionality of any part of Title III of the Omnibus Crime Control and Safe Streets Act of 1968." (415 U.S. at 150, 94 S.Ct. at 981.)

The section with which we are concerned was exhaustively dealt with in *United States v. Burroughs.* The different aspects of that case are variously reported at 379 F.Supp. 736 (1974), 510 F.2d 967 (1975), 537 F.2d 1156 (1976), and 564 F.2d 1111 (1977). The factual background in the litigation history of this case is best summarized as follows:

Defendants were management employees of J.P. Stevens & Company, the owner of a certain textile plant against which the Textile Workers Union of America initiated an attempt to unionize the employees in 1972. During the organizational drive, the union organizers registered at a motel across the street from the plant. At sometime during January of 1973, the defendants allegedly arranged to have the telephone instrument in the union organizers room converted into a listening device so that conversations in that room could be overheard in certain other motel rooms used by the motel's internal telephone system, and with the cooperation of the motel telephone switchboard operator. At the trial, the government showed only the attempted interception of oral communications. The telephone was not rigged in such a way so as to permit the interception of a telephone conversation, and could only be used to eavesdrop on the conversation

between individuals in the organizer's motel room.

After a jury verdict of guilty, the court, upon motion of the defendants, granted a judgment of acquittal. The district court determined that there was a failure of proof of any state action or any action under color of state or federal law in the attempt to intercept the communications. Although no state action was alleged in the information, and the statute in question does not specifically require such state action, the trial court concluded that such an interpretation was necessary to preserve the constitutionality of the statute. *United States v. Burroughs,* 379 F.Supp. 736 (D.S.C.1974).

The government filed a notice of appeal from the judgment of acquittal and thereafter the defendants moved that the appeal be dismissed. Concluding that the judgment of acquittal was not properly appealable by the government, we granted defendants' motion and dismissed the appeal. *United States v. Burroughs,* 510 F.2d 967 (4 Cir.1975) (Table). Thereafter the government filed a petition for rehearing and, based upon a more recent decision of the Supreme Court in *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), we held that the government could appeal the judgment; we then reinstated the appeal.

*United States v. Burroughs,* 564 F.2d 1111, 1112–13.

Pertinent to our purpose here, the Court decided that:

In our view, this portion of the legislative history indicates that Congress intended subsection (1)(a) to overlap with subsection (1)(b) and that (1)(a) could be applied to persons other than those acting under color of state or federal law who intercepted oral communications. Congress expressed concern for the constitutionality of subsection (1)(a) in "some cases," but it did not limit the subsection's application merely to per-

---

**2.** Again, the foregoing quotation must be read in the light of the facts: The interceptors were

federal agents, and the interceptions form the basis of prosecutorial action.

sons acting under color of state or federal law. Thus the district court's reading of § 2511(1)(a) as it applies to oral communications was overly restrictive.

Undeniably, subsections (1)(b)(i)–(iv) are based upon the power of Congress to regulate interstate commerce and require a specific showing of the effect upon interstate commerce. But because subsection (1)(a) does not specify any particular basis for jurisdiction, we are of the opinion that proof of any rational basis would be adequate. *See Perez v. United States,* 402 U.S. 146, 91 S.Ct. 1357, 28 L.Ed.2d 686 (1971). The essential element is that *some* basis for federal jurisdiction be established at trial.

*United States v. Burroughs,* 564 F.2d at 1115.

In reaching this conclusion, *i.e.,* that some basis for federal jurisdiction must be established before Congress can validly enact a federal criminal statute, the *Burroughs* court was strongly influenced by *United States v. Bass,* 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488. In *Bass,* the defendant was convicted of possessing a firearm in violation of 18 U.S.C.App. § 1202(a). After his conviction, the defendant unsuccessfully moved for arrest of judgment in the district court on the grounds that the statute did not reach possession of a firearm not shown to have been in commerce or affecting commerce, and that if it did, Congress had overstepped its constitutional powers under commerce clause. The court of appeals reversed the conviction on the grounds that if the government's construction of the statute were accepted, there would be substantial doubt about the statute's constitutionality. After interpreting the text of the statute to mean that any conviction of Bass must fall because of the government's failure to show the requisite nexus with interstate commerce, the Supreme Court went on to base its decision upon a second point.

Parenthetically, it should be noted that in 1967, the California legislature adopted Chapter 1.5 of Title 15 of the California Penal Code. Although many of these sec-

tions were contained in prior statutory enactments going back as far as 1911, the California Legislature stated, in Penal Code § 630 its policy to be that:

The Legislature hereby declares that advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.

The Legislature by this chapter intends to protect the right of privacy of the people of this state.

The Legislature recognizes that law enforcement agencies have a legitimate need to employ modern listening devices and techniques in the investigation of criminal conduct and the apprehension of law-breakers. Therefore, it is not the intent of the Legislature to place greater restraints on the use of listening devices and techniques by law enforcement agencies than existed prior to the effective date of this chapter.

Elsewhere in that chapter, the Legislature prohibited unauthorized wiretaps, eavesdropping on confidential communications, trespass for the purpose of invading privacy, the sale of eavesdropping devices, the interception of a privileged conversation of a prisoner, interception and divulgence of police radio communication, the disclosure of wire communication, and the unauthorized opening of a wire communication, and provided appropriate penalties for such acts. The title further exempts the lawful activity of law enforcement officers and specifically regulates the interception of such messages as part of law enforcement activities.

■ On the basis of the analysis of the United States Supreme Court in *United States v. Bass, supra,* and *Burroughs III,* the Court is satisfied that before 18 U.S.C. § 2511(1)(b)(ii) may form the basis for a federal prosecution, the appropriate factual

**1324**

nexus must be found. Clearly, none can be gleaned from the settled statement of facts upon which this motion proceeds.

█ As pointed out above, the defendants are jointly charged with a violation of 18 U.S.C. § 2511(1)(c) in the third count. The elements of this crime appear to be:

1. The disclosure or attempt to disclose to another person;

2. The contents of any wire or oral communication;

3. Knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this section.

The government case under this subsection fails on two grounds:

First, as was previously pointed out, it is the ruling of the Court that the interceptions of the conversations in this case were not illegal under the section which forms the basis for the charge, i.e., 18 U.S.C. § 2511(1)(b)(ii).

More importantly, even on appeal if the appellate court should conclude that the Court's determination of the interpretation of the applicable section in counts one and two was incorrect, there is certainly no fact contained in the settled statement of facts from which it could logically be inferred that these intercepted conversations were disclosed to "another person."

For all of the foregoing reasons, the defendants' motion to dismiss based upon the settled statement of facts is granted.