**UNITED STATES of America, Plaintiff-Appellant,**

**v.**

**Joe Belmontes ANAYA, and Henry Timothy Zavala, Defendants-Appellees.**

**No. 85–1038.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 15, 1985.

Decided Dec. 27, 1985.

Donald B. Ayer, U.S. Atty., Gloria C. Phares, Sp. Asst. U.S. Atty., Fresno, Cal., for plaintiff-appellant.

Jacob M. Weisberg, Fresno, Cal., for defendants-appellees.

Before GOODWIN, NELSON and CANBY, Circuit Judges.

NELSON, Circuit Judge:

The government appeals the district court's dismissal of indictments against two Parlier police officers. The officers were accused of bugging a closed executive session of the Parlier City Council in violation of 18 U.S.C. § 2511(1)(b)(ii) [1] which pro-

---

1. Section 2511 of Title 18 of the United States Code provides, in pertinent part:

    (1) Except as otherwise specifically provided in this chapter any person who—

      (a) willfully intercepts, endeavors to intercept, or procedures any other person to inter-

cept or endeavor to intercept, any wire or oral communication;

      (b) willfilly uses, endeavors to use, or procures any other person to use or endeavor to use any electronic, mechanical, or other de-

scribes the use of an electrical or mechanical device to intercept an oral communication. This case presents the novel question of whether section 2511(1)(b)(ii) requires a showing of an effect on interstate or foreign commerce.

## I. *Background*

The parties stipulated to the following facts:

On or about October 27, 1981, the Parlier City Council met in executive session during the evening hours. This executive session of the City Council was held in the courtroom of the Parlier Justice Court, which also served as the City Council Chambers. The Parlier Police Department was located in the same building, and it adjoined the Justice Court/City Council Chambers.

Prior to commencement of the City Council executive session, a Radio Shack brand FM wireless miniature microphone was surreptitiously taped under the counsel table of the courtroom where the City Council sat when in session. The miniature microphone measures $1\frac{3}{4}''$ by $\frac{3}{4}''$ by $\frac{5}{8}''$, operates on a tuneable 88–108 MHz FM band, and is powered by a 1.4 volt disc battery. The transmission range of the microphone does not exceed 250 feet.

Before the microphone was taped under the courtroom counsel table, an FM radio with a built-in cassette player had been adjusted to somewhere in the middle of the band range to receive transmissions from the microphone. The radio/cassette player was located in the Parlier Police Department, adjoining the City Council Chambers. The radio was 90 to 100 feet from the microphone located under the courtroom table.

The entire City Council session was overheard through the microphone and transmitted to the FM radio receiver located in the adjoining Parlier Police Department where the session was recorded on the radio's built-in cassette player.

The government concedes that it cannot establish that there was any interference with any radio broadcast or reception as a result of the monitoring and broadcasting of the City Council session through the FM miniature microphone.

The district court dismissed the 18 U.S.C. § 2511(1)(b)(i) violation holding that an essential element—a showing of an effect upon interstate commerce—was absent. Finding no underlying violation of section 2511, the district court additionally dismissed the 18 U.S.C. § 2511(1)(c) violation.

We hold that section 2511(1)(b)(ii) proscribes the interception of any oral communication, through the use of a device that transmits radio communications, *interstate or intrastate.* Therefore, a showing of an effect on interstate commerce is unnecessary. Accordingly, we reverse the district court's dismissal of the section 2511(1)(b)(ii) violation. With respect to the

---

vice to intercept any oral communication when—

(i) such device is affixed to, or otherwise transmits a signal through, a wire, cable, or other like connection used in wire communication; or

(ii) such device transmits communications by radio, or interferes with the transmission of such communication; or

(iii) such person knows, or has reason to know, that such device or any component thereof has been sent through the mail or transported in interstate or foreign commerce; or

(iv) such use or endeavor to use (A) takes place on the premises of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or (B) obtains or is for the purpose of obtaining information relating to the operations of any business or other commercial establishment the operations of which affect interstate or foreign commerce; or

(v) such person acts in the District of Columbia, the Commonwealth of Puerto Rico, or any territory or possession of the United States;

(c) willfully discloses, or endeavors to disclose, to any other person the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication in violation of this subsection....

shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 2511 (1970 & Supp.1985).

section 2511(1)(c) violation, we remand so that the district court may hold proceedings in light of our above holding.

## II.  Standard of Review

■ Since the parties have stipulated to the facts, none is in dispute. The only question then is whether the district court correctly interpreted section 2511(1)(b)(ii). This is a pure question of law and is therefore reviewable *de novo. United States v. McConney,* 728 F.2d 1195, 1201 (9th Cir.) (en banc), *cert. denied,* —— U.S. —— 105 S.Ct. 101, 83 L.Ed.2d 46 (1984).

## III.  Section 2511(1)(b)(ii)

The government argues that section 2511(1)(b)(ii) applies to *"all* radio broadcasts, not just those that actually move in interstate commerce." Relying on the Fourth Circuit's decision in *United States v. Burroughs,* 564 F.2d 1111 (4th Cir.1977), however, the trial court concluded that the "appropriate factual nexus" was lacking and dismissed the violations. *United States v. Anaya,* 601 F.Supp. 1318, 1323–24 (E.D.Cal.1985).

In *Burroughs,* the defendants were indicted for violating section 2511(1)(a) for bugging the telephone in a motel room across the street from defendants' plant. Affirming the defendants' acquittals, the *Burroughs* court held that subparagraph (a) requires either a showing that the persons charged were acting under color of law or a showing of an effect upon interstate commerce. Continuing, the court, in dictum, stated: "The interception of *wire* communications under § 2511(1)(a) and *oral* communications under § 2511(1)(b)(i)-(iv) specifically require a showing of an effect upon interstate commerce to establish a violation of the statute." *Burroughs,* 564 F.2d at 1113 (emphasis in original). Defendants, here, contend that since it is stipulated the government cannot prove interference with any radio broadcast or reception and it was physically impossible for the broadcast to extend beyond state lines, *Burroughs* is dispositive, and

the dismissal of the violations must be affirmed.

The government, however, advances a different interpretation of section 2511(1)(b)(ii). It apparently contends that subparagraph (b)(ii)'s prohibition against radio interception of oral communications should, like subsection (a)'s prohibition against the interception of *wire* communications, extend to all such radio interceptions, *interstate and intrastate.*

The government argues that interstate and intrastate radio transmissions, as in the case of interstate and intrastate wire communications, are so interdependent that Congress necessarily intended to exercise jurisdiction over those radio transmissions which directly affect interstate commerce *and* over those that do not. *See Fisher's Blend Station, Inc. v. State Tax Commission,* 297 U.S. 650, 655, 56 S.Ct. 608, 610, 80 L.Ed. 956 (1936) ("By its very nature broadcasting transcends state lines and is national in its scope and importance—characteristics which bring it within the purpose and protection, and subject it to the control, of the commerce clause."); *Federal Radio Commission v. Nelson Brothers Bond & Mortgage Co.,* 289 U.S. 266, 279, 53 S.Ct. 627, 633, 77 L.Ed. 1166 (1933) ("No question is presented as to the power of the Congress, in its regulation of interstate commerce, to regulate radio communications. No state lines divide the radio waves, and national regulation is not only appropriate but essential to the efficient use of radio facilities.").

We agree with the government. A close reading of both the statute and its legislative history facilitates resolution of this novel issue.

On its face, the structuring of subsection 2511(1) seems inexplicable; the interception of *wire* communications is prohibited in only subparagraph (a), yet, the interception of *oral* communications is expressly prohibited in both subparagraphs (a) and (b). The unusual statutory construction is, however, alluded to in the legislative history of section 2511.

Congress, throughout the legislative process, was confident that its authority to legislate as to the interception of *wire* communications (interstate and intrastate) was solidly supported by the commerce clause. See 18 U.S.C. § 2511 congressional findings; S.Rep. No. 1097, 90th Cong., 2d Sess. 92, *reprinted in* 1968 U.S.Code Cong. & Ad.News 2112, 2180 [hereinafter cited as the Report]. As the Report notes, the common law supported the proposition that Congress could proscribe the interception of *wire* communications, both interstate and intrastate, pursuant to the commerce clause:

> Subparagraph (a) establishes a blanket prohibition against the interception of any wire communication. Since the facilities used to transmit wire communications form part of the interstate or foreign communications network, Congress has plenary power under the commerce clause to prohibit all interception of such communications, whether by wiretapping or otherwise. (*Weiss v. United States*, 60 S.Ct. 269, 308 U.S. 321 [84 L.Ed. 298] (1939)).

Report, *supra*, at 2180.[2]

With respect to regulating the interception of oral communications, however, Congress was less certain that it could legitimately legislate with regard to *all* such communications. Apparently, Congress was unsure whether *all* interceptions of oral communications have an effect upon interstate commerce. *See* Right of Privacy Act of 1967: Hearings on S. 928 Before the Subcomm. on Admin. Practice and Proc. of the Senate Comm. on the Judiciary, 90th

Cong., 1st Sess. 441 (1967) (prepared statement of Prof. G. Robert Blakely, Notre Dame Law School) [hereinafter cited as Hearings].[3] As an alternative, Professor Blakely suggested that the fourteenth amendment's grant of privacy could be employed to legitimate Congress' exercise of jurisdiction over wholly intrastate oral communications. *See* Hearings, *supra*, at 414, 442 & 464–65. Taking the more cautious route, Congress prohibited the interception of oral communications pursuant to both the fourteenth amendment (subparagraph (a)) and the commerce clause (subparagraph (b)). The dual proscription against the interception of oral communications and the concomitant unusual statutory structuring, therefore, is explained by Congress' desire to legislate under both constitutional grants of authority. As the Report states, subparagraph (a) embodies Congress' attempt to legislate with regard to its authority under the fourteenth amendment:

> The broad prohibition of subparagraph (a) is also applicable to the interception of oral communications. The interception of such communications, however, does not necessarily interfere with the interstate or foreign communications network, and the extent of the constitutional power of Congress to prohibit such interception is less clear than in the case of interception of wire communications. The Supreme Court has indicated that Congress has broad power to protect certain rights under the Equal Protection Clause of the 14th amendment against private interference. (*United States v. Guest*, 86 S.Ct. 1170, 383 U.S. 745 [16

---

**2.** *See also* The Association of the Bar of the City of New York, Committee on Federal Legislation, Committee on Civil Rights: "Proposed Legislation on Wiretapping and Eavesdropping after *Berger v. New York* and *Katz v. United States*," *reprinted in* 114 Cong.Rec. 14470: "There has been no doubt that legislative power to control exists in the area of wiretapping, under the commerce clause. Indeed, it is hard to see how there could be an intrastate wire communication which in no way 'affected commerce'. [Citing *Weiss*]." 114 Cong.Rec. at 14477.

**3.** Professor Blakely stated:

> The proposed act fails to do the job. Because it keys its coverage solely to the Commerce Power, it will not reach the vast majority of [private] situations. Most commercial espionage takes place between businesses involved in "interstate commerce".... But few, if any, [private relations] investigations ever touch interstate commerce. A wired bug made intrastate using its own power will not be covered by the act. It does not take a lot of imagination to figure this out, and the statute will thus have no impact in this crucial area.

*Id.* at 442. *See also* Hearings, *supra*, at 464–65.

L.Ed.2d 239] (1966) (concurring and dissenting opinions).) The right here at stake—the right of privacy—is a right arising under certain provisions of the Bill of Rights and the due process clause of the 14th amendment. Although the broad prohibitions of subparagraph (a) could, for example, be constitutionally applied to the unlawful interception of oral communications by persons acting under color of State or Federal law, see *Katzenbach v. Morgan*, 86 S.Ct. 1717, 384 U.S. 641 [16 L.Ed.2d 828] (1966), the application of the paragraph to other circumstances could in some cases lead to a constitutional challenge that can be avoided by a clear statutory specification of an alternative constitutional basis for the prohibition.

Report, *supra*, at 2180.[4]

In order to "create an essentially comprehensive ban on the interception of oral communications," *id.* at 2181, however, Congress "included subparagraph (b), which relies on accepted jurisdictional bases under the commerce clause and other provisions of the Constitution...." *Id.* at 2180. Accordingly, subparagraphs (b)(i) through (b)(iv) delineate four situations where the commerce clause is implicated and federal jurisdiction is conferred.

Pages 2180–81 of the Report, discussing Congress' jurisdictional authority for subparagraphs (i)-(iv),[5] provide further support for the government's construction. All four subparagraphs are clearly enacted pursuant to the commerce clause. Only subparagraph (ii), however, fails to expressly require a connection to "interstate or foreign commerce." Report, *supra*, at 2181. Rather, like subparagraph (v), where Congress retains exclusive territorial jurisdiction, "[s]ubparagraph (ii) is intended to be a *complete* prohibition against the use of [radio] devices for the interception of oral communications." *Id.* at 2181 (emphasis added). Indeed, subparagraph (ii)'s prohibition applies to "*any* interception through the use of a device which transmits communications by radio or which interferes with the transmission of radio communications." *Id.* (emphasis added).

Moreover, in the text of the statute itself, of those subparagraphs enacted pursuant to the commerce clause, only subparagraphs (i) and (ii) make no mention of a necessary connection to interstate or foreign commerce. The omission in subparagraph (i) is apparently explained by the

---

**4.** Apparently, the Report inadvertently interchanges *United States v. Guest*, 383 U.S. 745, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966), for *Katzenbach v. Morgan*, 384 U.S. 641, 86 S.Ct. 1717, 16 L.Ed.2d 828 (1966), cited later for the proposition for which *Guest* stands.

**5.** The Report states, in pertinent part:

Subparagraph (i) prohibits any interception through the use of a device linked in any way to the *interstate or foreign* network of wire communications....

Subparagraph (ii) prohibits *any* interception through the use of a device which transmits communications by radio or which interferes with the transmission of radio communications. *As in the case of wire communications, Congress has plenary power under the commerce clause to regulate not only the use of radio devices, but also the use of devices that interfere with radio communications.* Subparagraph (ii) is intended to be a *complete* prohibition against the use of such devices for the interception of oral communications....

Subparagraph (iii) prohibits any interception through the use of a device, if the device itself or any of its components has been sent through the mail or transmitted in *interstate or foreign commerce.*

Subparagraph (iv) prohibits any interception that takes place on the premises of a business whose operations *affect interstate or foreign commerce.* The subparagraph also prohibits any interception, wherever it takes place, which obtains or is for the purpose of obtaining information about such a business....

Subparagraph (v) prohibits any interception that takes place in the District of Columbia, Puerto Rico, or the territories or possessions of the United States. Since Congress has plenary power over these geographic areas, the prohibitions are *complete.*

Taken together, subparagraphs (i) to (v) of subparagraph (b) create an essentially comprehensive ban on the interception of oral communications. The provisions will be applicable to the overwhelming majority of cases involving the unlawful interception of such communications, and it will be unnecessary to rely on the broader prohibition of subparagraph (a)....

Report, *supra*, at 2180–81 (emphasis added).

complete jurisdiction Congress retains with respect to *wire* communications. *See Weiss,* 308 U.S. at 327, 60 S.Ct. at 271. The omission in subparagraph (ii), however, is inexplicable if Congress did not similarly intend to exercise complete jurisdiction over all radio broadcasts pursuant to *Fisher's Blend Station* and *Nelson Brothers Bond & Mortgage Company.*

We note the Fourth Circuit's suggestion in *United States v. Duncan,* 598 F.2d 839 (4th Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979), and agree that "[s]ubsection (ii) of § 2511(1)(b) prohibits the interception of oral communications through the use of a radio transmitter. Congress indisputably has the power to regulate all use of radio transmission equipment. [Citing *Nelson Bros. Bond & Mortgage Co.*]" *Duncan,* 598 F.2d at 854 n.11.[6]

That this interpretation was the one Congress intended is evidenced by the testimony of Attorney General Ramsey Clark at the hearings on section 2511:

> Senator LONG. General, you mentioned in your statement that the Federal Government had the plenary authority in eavesdropping and wiretapping legislation. What about the use of bugs and electronic gadgets where they are not used in interstate commerce?
>
> \* \* \* \* \* \*
>
> General CLARK. [I]n section 2511(a)(2) [now § 2511(1)(b)(ii)], we have reached radio transmission, which also clearly involves the commerce power of the Federal Government.

Hearings, *supra,* at 50–51.

██ We therefore find that there was a sufficient factual basis to find defendants in violation of section 2511(1)(b)(ii).

## IV. *Section 2511(1)(c)*

Resolution of the above issue is dispositive of the dismissal of the 2511(1)(c) violation. Subparagraph (c) is violated when a person "willfully discloses, or endeavors to disclose, to any other person, the contents of any wire or oral communication, knowing or having reason to know that the information was obtained through the interception of a wire or oral communication *in violation of this subsection.*" 18 U.S.C. § 2511(1)(c) (emphasis added).

The district court found no underlying violation of subsection (1) so it dismissed the subparagraph (c) violation. As stated above, however, we find defendants in violation of subparagraph (b)(ii), therefore, as the government asserts, it is entitled to allege additional facts to show that the communication was disclosed to another person. Although defendants argue to the contrary, the stipulation of facts was "entered into solely for the purpose of these motions [to dismiss] and is not to be a statement of stipulated facts for the purpose of trial or any other purpose." Settled Statement of Facts re: Defendants' Motion to Dismiss at 1.

Accordingly, we remand the section 2511(1)(c) violation to the district court in order to ascertain whether defendants "willfully disclose[d], or endeavor[ed] to disclose, to any other person," the contents of the unlawfully intercepted communications.

REVERSED and REMANDED.

---

**6.** *See also* J.G. Carr, *The Law of Electronic Surveillance* 26 (1977 & 1985 Supp.) ("Radio transmissions are subject to federal regulation under the commerce clause, which appears to provide ample authority for the prohibition in § 2511(1)(b)(ii) against private bugging involving the use of a radio device.").