**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**William Fleming BURBANK, IV, a/k/a**
**Bill Burbank, Jr.,**
**Defendant–Appellant.**

**No. 87–5116.**

United States Court of Appeals,
Fourth Circuit.

Argued March 11, 1988.

Decided June 1, 1988.

**454**

Robert B. Long, Jr. (Long, Parker, Payne & Warren, P.A. on brief), for defendant-appellant.

Jerry W. Miller, Asst. U.S. Atty. (Thomas J. Ashcraft, U.S. Atty., on brief), for plaintiff-appellee.

Before HALL and WILKINS, Circuit Judges, and BRITT, Chief District Judge.*

BRITT, District Judge:

Defendant William Fleming Burbank, IV (hereafter Burbank, Jr.) was charged in a fourteen-count bill of indictment with violations of 18 U.S.C. § 2314. His motions for judgment of acquittal pursuant to the provisions of Rule 29 of the Federal Rules of Criminal Procedure interposed at the conclusion of the government's evidence and renewed at the conclusion of all the evidence were denied. The jury returned a verdict of guilty on the twelve counts submitted to it, the remaining two counts having been dismissed by the court on motion of the government prior to trial. From the judgment entered, defendant appeals.

Defendant Burbank, Jr. and his father, William F. Burbank, III (hereafter Burbank, Sr.), were the sole shareholders, officers and directors of Sure Fire Distributing, Inc. (hereafter Sure Fire), a corporation engaged in the distribution of motorcycle parts and accessories throughout the southeastern United States. Both men worked on a regular basis in the business of the corporation which maintained its offices and warehouses in Asheville, North Carolina.

In early 1982 defendant Burbank, Jr. arranged for Blake Culpepper of Altamonte Springs, Florida, a friend, to open a bank account in Florida in the name of Southeastern Tire and Battery (hereafter Southeastern). Thereafter, Burbank, Jr. drew checks on Sure Fire payable to Southeastern, or used Sure Fire checks to obtain bank checks payable to Southeastern, and sent them to Culpepper in Florida. Each transaction involved at least $5,000. Culpepper deposited the checks to Southeastern's account in a Florida bank and thereafter obtained a cashier's check payable to Burbank, Jr. for all but $100 of the amount involved. Culpepper retained the $100 in each transaction as his fee. The total amount sent from Burbank, Jr. to Culpepper and deposited to the account of Southeastern was $56,257.05.

Culpepper did not know a company named Southeastern Tire and Battery and never paid any of the monies received from Sure Fire to any supply company for parts or materials. No evidence was presented by the government to show that the transactions were not authorized by the corporation or the use to which defendant placed the money after it was returned to him. Burbank, Sr. testified on behalf of defendant that the transactions in question were made with his knowledge, consent, and approval before they were undertaken. He also testified that he discussed the transactions with a certified public accountant and an attorney. He further testified that the transactions were made in the specified manner in order to generate cash to pay an individual in cash for merchandise delivered to Sure Fire at a substantial discount.

## DISCUSSION

Title 18 U.S.C. § 2314 provides, in pertinent part:

> Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud ... Shall be fined not more than $10,000 or imprisoned not more than ten years, or both.

---

* Chief District Judge for the Eastern District of North Carolina, sitting by designation.

Defendant contends that his motion for judgment of acquittal at the conclusion of the government's evidence should have been allowed because there was no evidence that the acts of the defendant were done without the knowledge and consent of the corporation and its only other shareholder, director and officer, the defendant's father. He further contends that the motion for judgment of acquittal made at the conclusion of all the evidence should have been allowed because at that time the only other director and shareholder of the corporation, Burbank, Sr., had testified that all of the transactions were done with his express approval and consent. The government, in response, merely quoted excerpts from comments made by the trial judge in ruling on the motions. The judge felt that there was sufficient circumstantial evidence, primarily the testimony of Culpepper, presented by the government in its case-in-chief to withstand the motion for judgment of acquittal. At the conclusion of all the evidence, he voiced the opinion that since he had already ruled that there was enough circumstantial evidence to support the government's case, the jury was free to disbelieve the testimony of Burbank, Sr.

■ It is quite evident from the language of the statute itself that the activity Congress intended to punish was the interstate transportation of *stolen* property. Although the words "converted" and "taken by fraud" are used in addition to the word "stolen," the use is in the disjunctive. In addition, both "convert" and "take by fraud" embrace the wrongful acquisition of the property of another just as does the word "steal." And, even though the indictment omits the word "stolen" relying instead on the words "converted and taken by fraud," the burden is on the government to prove that the property in question had been wrongfully appropriated.

■ One cannot steal from himself. The very essence of any theft offense is the wrongful appropriation of the property of another. The indictment in this case alleged that the money belonged to Sure Fire. Had it alleged that the money be-

longed to Burbank, Jr., there can be no doubt that it would not have alleged a criminal offense. Likewise, had the evidence disclosed that Burbank, Jr., was the sole owner of Sure Fire, he could not be guilty of violating this statute. In *United States v. Brandon,* 651 F.Supp. 323 (W.D. Va.1987), the defendant, the sole owner of a corporation, was indicted. for interstate transportation of property which he allegedly wrongfully appropriated from the corporation. In dismissing those charges, Chief Judge Turk said:

> Criminal liability under section 2314 requires an act depriving an owner of a right in property.... A corporation's ownership of property depends on the discretion and consent of its directors, and in some cases, its stockholders. [citation omitted.] Although a corporation may have ownership rights separate from its stockholders, it is the directors and stockholders who control and exercise those rights. Thus, when a sole stockholder elects to remove corporate assets, his decision cannot be deemed a criminal deprivation of someone elses [sic] property rights. Instead, it is an exercise of rights that are lawfully within his control. If the decision he made was financially imprudent, unfair, or dishonest then he may be civilly liable for violations of his fiduciary obligations to creditors or criminally liable under tax and bankruptcy laws. The court refuses, however, to extend the corporate legal fiction to mean that a sole stockholder can be. guilty of stealing, converting, or fraudulently taking corporate property over which he alone maintains control.

651 F.Supp. at 326–27.

In *United States v. Rogers,* 786 F.2d 1000 (10th Cir.1986), the defendant was convicted of a violation of 18 U.S.C. § 2314 upon evidence that showed that he had removed some articles from an airplane which he owned. The airplane had been seized by the United States Customs Service and placed under seal pending hearing on a charge that the plane should be forfeited for use in alleged illegal drug trafficking, and transportation of those articles in interstate commerce. In responding to a

contention of the government that the seizure gave it a sufficient possessory right to bring the action, the Tenth Circuit said:

> The government's ownership, or the level of its possessory rights, is important in the instant case because the government in essence is asserting that defendant could be guilty of theft of his own property. Despite the government's acknowledged power to put a seal on the goods, it is a very significant step to say that the possessory interest generated by the seal supports a charge akin to larceny against the person who is still the legal owner of the property.... Although there may be circumstances short of forfeiture proceedings that are so compelling that certain property might be said to "belong" to the government for purposes of a charge under § 2314, they have not been presented here. We agree with the Fifth Circuit that 18 U.S.C. § 2314 "should not be expanded at the government's will beyond the connotation—depriving an owner of its rights in property—conventionally called to mind."

786 F.2d at 1003.

In *United States v. Carman*, 577 F.2d 556 (9th Cir.1978), the defendant shareholders of a corporation withdrew funds from the corporation, transported them to another state, converted them to cashier's checks, and laundered them through other accounts in order to prevent their attachment by creditors. This activity gave rise to a charge of interstate transportation of fraudulently obtained property under 18 U.S.C. § 2314. Upon his conviction defendant appealed contending that placing the money out of the reach of creditors is not a crime under the statute. The Ninth Circuit agreed and reversed the conviction. In doing so the court said:

> No case has been cited to us which so extends the reach of 18 U.S.C. § 2314. Whether the matter be approached from the standpoint of fixing the limits of the words "stolen," "converted," or "taken by fraud," one encounters the requirement that the "stealing," "conversion," or "taking" must be from one having the attributes of an owner.
>
> ....

*United States v. Roselli*, 432 F.2d 879, 891 (9th Cir.1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971) is not to the contrary. Its holding that commission of the crimes embraced by 18 U.S.C. § 1952 and 18 U.S.C. § 2314 did not require the knowing use of interstate facilities cannot reasonably be stretched to justify extending 18 U.S.C. § 2314 to embrace every fraudulent scheme which, however remotely, diminishes another's wealth. *Roselli's* suggestion that the essence of the crime set forth in 18 U.S.C. § 2314 is "the fraudulent scheme itself" must be read in the context of its holding with respect to the knowing use of interstate facilities. To do otherwise would be to make criminal, on the basis of a contextually uprooted aphorism, a debtor's fraudulent concealment of his own shrinking assets from the nervous scrutiny of his general creditors. Our refusal to construe 18 U.S.C. § 2314 so as to make criminal this form of commercial dishonesty is consistent with the maxim that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity."

577 F.2d at 565.

The sole authority cited and relied on by the government in its one and one-half page brief is *United States v. Gullett*, 713 F.2d 1203 (6th Cir.1983), *cert. denied*, 464 U.S. 1069, 104 S.Ct. 973, 79 L.Ed.2d 211 (1984). *Gullett* is of no help to the government. There, defendants who were partners in an accounting firm devised a scheme whereby for a fee they would take the checks of their clients, deliver them to a confederate in Canada where they were cashed with the net proceeds being returned to the clients. The officers of several different companies who were clients of defendants used their services to cash checks for illegal or improper purposes. To the contention of defendants that the government's evidence showed "only that officers of several corporations used their broad agency powers to write checks for the purpose of generating cash to benefit the corporations," the court responded, "[t]his explanation, however, ignores the

parade of phony invoices and fictitious payees which were created in order to deceive *uninvolved corporate officers and shareholders*". 713 F.2d at 1210 (emphasis added). With regard to one of the corporations, the court stated, "[t]he record indicates that [the] principal stockholder would not have consented to these payments had he known the truth." *Id.* With regard to another whose president signed checks, the court stated, "[h]ad he known the invoices were false, he would not have signed the checks." *Id.* The court went on to say,

> With respect to each check that was cashed in Canada the defendants participated in a scheme that required the preparation of false invoices and documents as a cover for the cashing of the check. These false statements were then used by corporate officers as a basis for corporate payments. Although corporate officers with broad agency powers authorized and participated in the scheme, the officers necessarily made false entries on the books of their corporations in order to secure the corporate payments. These false entries deliberately misrepresented the nature of the transactions to the corporation as an entity *and hence to its owners, the shareholders, and its directors.*

713 F.2d at 1211 (emphasis added).

*Brandon* is more analogous to this case than *Gullett.* The Court's reasoning there, which we adopt, is equally applicable here. That Sure Fire had two shareholders, two officers and two directors rather than one makes no difference. The fact remains that the government has failed to prove that the property which was transported in interstate commerce was stolen, converted or taken from Sure Fire by fraud. In fact, all of the evidence shows positively that it was not.

The lower court erred in overruling the motion of defendant for judgment of acquittal. Therefore its judgment is

REVERSED.