**UNITED STATES of America, Plaintiff,**

v.

**Sean J. GALLAGHER and Commodity Recycling, Inc.**

Nos. 3:93CR139–07, 3:93CR139–08.

United States District Court,
E.D. Virginia,
Richmond Division.

June 23, 1994.

Dennis William Dohnal, Bremner, Baber & Janus, Richmond, VA, James Stephen Yoffy, Bremner, Baber and Janus, Richmond, VA,

for Sean Joseph Gallagher, Commodity Recycling.

John Granville Douglass, U.S. Attys. Office, Richmond, VA, for U.S.

*MEMORANDUM*

MERHIGE, District Judge.

This matter is before the Court on motion by defendant Commodity Recycling, Inc. ("CRI"), pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure, to set aside the jury verdict of guilty as to CRI and to enter judgment of acquittal.

Beginning February 10, 1994, this matter was tried to a jury, and on February 16, 1994, defendant CRI was found guilty on Count 3 (conspiring to launder money in violation of 18 U.S.C. § 1956(g)) and Count 19 (money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i)).[1] CRI was charged as a principal and an aider and abettor under Count 19.

In support of its motion, CRI submits that the evidence at trial established that the corporation was at all times a subchapter S corporation wholly owned by the codefendant, Sean J. Gallagher ("Gallagher"). As such, CRI states, the corporation is treated the same as the individual who owns it for tax purposes only. Defendant characterizes the funds which Gallagher obtained from CRI and used to purchase the assets that are the subject of forfeiture as personal funds of Gallagher in the form of distribution of income, periodic draws, or partial repayment of stockholder loans. Defendant submits that on one occasion where Gallagher used the corporate line of credit to secure repayment of a personal loan, the credit was used without Gallagher's knowledge and at the insistence and for the sole benefit of the lender bank.

CRI further states that it derived no benefit, direct or indirect, from the purchase of the subject assets.[2] Defendant maintains

---

1. CRI was tried along with codefendants Sean J. Gallagher and Charles Francis Hass. The jury returned verdicts of guilty as to Gallagher on Counts 3, 18, 19, 20, and 24, and guilty as to Hass on Counts 1, 4, 5, 10, and 25.

2. The "subject assets" include certain real property in Charles City County, Virginia, a mobile home, initial capitalization of EVO–X, Inc., title and registration fees for a pickup truck, and a loan to one Steven Lipscomb.

that it was at all times a legitimate corporation involved in brokering, and at no time was it operated as a "front" or "sham" for any illegal activity. CRI notes that, whereas the personal funds obtained by Gallagher to purchase the subject assets did not exceed $200,000.00, CRI had gross sales of several million dollars of legitimate income during the same period. Defendant adds that Rebecca Meade was the only other employee/agent of CRI who was involved in the subject activities, and Ms. Meade testified, without contradiction, that she was not knowingly involved in any of the charged criminal activities.

CRI points to *United States v. Automated Medical Laboratories, Inc.*, 770 F.2d 399 (4th Cir.1985) and *Mylan Laboratories, Inc. v. Akzo, N.V.*, 2 F.3d 56 (4th Cir.1993) for the proposition that a corporation may be held criminally liable for the acts of its agents who were acting with at least apparent authority and with the intent to benefit the corporation. Noting that the cases do not distinguish between different types of corporate structure, CRI urges that the offending actions of the agent must be taken *with the intent to benefit the corporation* before criminal liability may attach.

CRI argues that, based on the evidence established at trial, none of the acts undertaken by Gallagher can be said to have been taken with the intent to benefit the corporation. Rather, defendant contends, the evidence showed that through his actions Gallagher intended only to benefit either himself or Tommy Lewis—the person on whose behalf and instructions the subject activity occurred. Again, CRI asserts that the one instance of Gallagher's temporary use of the corporate credit line was accomplished both unknowingly and for the benefit of a third party.

Whereas the evidence at trial was arguably insufficient to establish an essential element of the offense—intent to benefit the corporation—defendant contends that the jury verdicts of guilt on Counts 3 and 19 must be set aside.

The Government opposes CRI's motion, arguing that the evidence at trial showed that in each of the subject transactions, Gallagher directed Meade to transfer corporate funds or use the corporate line of credit for the purpose of initiating the transaction. At Gallagher's direction, the Government argues, Meade made each transaction appear legitimate and, in most instances, maintained the records of the transactions at the corporate offices.

The Government argues that a Charles City County real estate purchase exemplifies CRI's central role in each transaction. There, after Lewis made a $1,000.00 cash down payment, Gallagher completed the purchase, taking all real estate records in his name even though Lewis was the only person ever to make use of the land. According to the Government, the evidence also established that Lewis agreed secretly to reimburse Gallagher with cash. Gallagher fully understood, the Government contends, that the cash came from Lewis' only source of income: drug distribution. To complete the transaction and at Gallagher's instruction, Meade transferred $9,840.00 from a CRI account, drew $45,000.00 from a CRI line of credit, and wrote a CRI check for $15,000.00.

The Government avers that the same pattern of use of corporate funds animated the purchase of a mobile home and the capitalization of EVO–X, Inc., a separate entity.

While the Government acknowledges the rule on corporate criminal liability articulated in *Automated Medical*, 770 F.2d 399, and *United States v. Basic Const. Co.*, 711 F.2d 570 (4th Cir.1983), it argues that neither case deals with a corporation acting at the direction of a 100 percent shareholder and chief executive officer, and neither case establishes the exclusive standard for determining corporate criminal liability. The "intent to benefit" requirement, the Government asserts, merely exists to insure that a corporate act is undertaken within the scope of authority of a corporate agent. In *Automated Medical*, the Government notes, the Fourth Circuit stated that whether corporate criminal liability exists "includes a determination of whether the agents were acting for the benefit of the corporation." *Id.* at 406. Here, the Government contends, the need for inquiry into any "benefit" to the corporation

is obviated by the fact that the corporate acts were directed by the 100 percent shareholder and chief executive officer of the corporation.

Even under a strict application of the *Basic Construction* formula to CRI's acts, the Government urges, the jury's verdict remains valid. While the benefit to the corporation may not have been financial, the transactions, according to the Government, helped fulfill the objectives of its sole shareholder—assisting Lewis in laundering money and fostering Gallagher's relations with the Hell's Angels, a motorcycle club. In addition, the Government argues that the transfer of funds from CRI which initiated each money-laundering act resulted in the fulfillment of CRI's financial obligations to its sole shareholder.

Rule 29(c) provides that a court, on the motion of a defendant after a verdict of guilty, may "set aside the verdict and enter judgment of acquittal." Fed.R.Crim.P. 29(c). This Court considers the instant motion under a well-established standard:

> When a defendant moves for a judgment of acquittal, the Court "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt. If [it] concludes that upon the evidence there must be such a doubt in a reasonable mind, [it] must grant the motion; or, to state it another way, if there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt, the motion must be granted. If [it] concludes that either of these two results, a reasonable doubt or no reasonable doubt, is fairly possible, [it] must let the jury decide the matter."

*United States v. Mariani*, 725 F.2d 862, 865 (2d Cir.1984) (citations omitted). In short, in a challenge to the sufficiency of the evidence, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

Although predominantly concerned with the resolution of factual issues, CRI's motion initially requires the Court to consider the legal question regarding to scope of corporate criminal liability. The distinction between a ruling of a trial court in entering judgment of acquittal representing the resolution of factual issues as opposed to legal questions is not without significance. *See United States v. Burroughs*, 564 F.2d 1111 (4th Cir.1977). In *Burroughs*, the Fourth Circuit interpreted the United States Supreme Court's decision in *United States v. Martin Linen Supply Company*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) to import that the government cannot appeal the ruling of a district judge entering judgment of acquittal based on resolution of factual rather than legal questions. *Burroughs*, at 1118.

The Court's resolution of the legal question presented by CRI's motion is guided by the line of Fourth Circuit cases, beginning with *Old Monastery Company v. United States*, 147 F.2d 905 (4th Cir.), *cert. denied*, 326 U.S. 734, 66 S.Ct. 44, 90 L.Ed. 437 (1945), delineating the parameters of corporate criminal liability. In *Old Monastery*, the court stated, "[w]e do not accept benefit as a touchstone of corporate criminal liability; benefit, at best, is an evidential, not an operative, fact." *Id.* at 908. With that principle in mind, the court articulated the "generally accepted" rule on corporate criminal liability as follows:

> A corporation may be held criminally responsible for acts committed by its agents, provided such acts were committed within the scope of the agents' authority or course of their employment.... Since a corporation acts by its officers and agents, their purposes, motives, and intent are just as much those of the corporation as are the things done.

*Id.* (citations omitted).

In *Basic Construction* and *Automated Medical*, the Fourth Circuit expanded on the proper scope of the corporate criminal liability analysis. The *Basic Construction* court relied on cases from several other circuits to announce the rule as follows:

> These cases hold that a corporation may be held criminally responsible for antitrust violations committed by its employees if they were acting within the scope of their

authority, or apparent authority, and for the benefit of the corporation, even if, ... such acts were against corporate policy or express instructions.

*Id.* at 573. The "intent to benefit" aspect of corporate criminal liability was explained in *Automated Medical.*

The basic purpose of requiring that an agent have acted with the intent to benefit the corporation, however, is to insulate the corporation from criminal liability for actions of its agents which be *inimical* to the interests of the corporation or which may have been undertaken solely to advance the interests of that agent or of a party other than the corporation. ... It would seem entirely possible, therefore, for an agent to have acted for his own benefit while also acting for the benefit of the corporation.

*Id.* at 407. (original emphasis) (citations omitted). In both cases, the Fourth Circuit concluded that the corporate agents at issue could properly be said to have been acting for the benefit of the corporation, and, therefore, corporate criminal liability could attach.

However, in both *Basic Construction* and *Automated Medical,* as well as the authorities relied on therein, the agents or employees on whose acts corporate criminal liability was predicated were individuals plainly distinct from the corporate authority structure. Indeed, the defendant in *Basic Construction* premised its defense on the argument that "the activities for which it was charged were perpetrated by two relatively minor officials and were done without the knowledge of high level corporate officers." *Id.* at 572.[3] Further, the employees constituting the "compliance team" and responsible for the criminal acts imputed to the corporate defendant in *Automated Medical* were simply actors in the substantial corporate structure constituting Automated Medical Laboratories, Inc.

The instant facts present a far different corporate entity than those from which the doctrine of corporate criminal liability in this circuit has developed. It is undisputed that Gallagher is the sole shareholder and owner of the moving codefendant, CRI. The dis-

tinction between corporations with one or two shareholders and those with multiple owners, shareholders and officers is one to which the Fourth Circuit has attached some importance. *See United States v. Burbank,* 848 F.2d 453 (4th Cir.1988).

In *Burbank,* the court looked beyond the corporate structure to conclude that the defendant, one of two shareholders of the corporation, could not be convicted of stealing money from the corporation, Sure Fire Distributing, Inc. Notwithstanding the fact of incorporation, the court concluded that

[o]ne cannot steal from himself. The very essence of an theft offense is the wrongful appropriation of the property of another. The indictment in this case alleged that the money belonged to Sure Fire [Distributing, Inc.]. Had it alleged that the money belonged to [the defendant], there can be no doubt that it would not have alleged a criminal offense.

*Id.* at 456. Thus, although *Burbank* was concerned with individual criminal liability, the court displayed a willingness to depart from the traditional delineation between the corporate entity and its shareholders. Because there were only two shareholders, the court considered their interests to be identical to those of the corporation.

In *United States v. Brandon,* 651 F.Supp. 323 (W.D.Va.1987), cited with approval in *Burbank,* the court discussed the somewhat ephemeral dynamic between a sole shareholder and the corporate entity.

Although a corporation may have ownership rights separate from its stockholders, it is the directors and stockholders who control and exercise those rights. Thus, when a sole stockholder elects to remove corporate assets, his decision cannot be deemed a criminal deprivation of someone elses [sic] property rights. Instead, it is an exercise of rights that are lawfully within his control.

*Brandon,* at 327. Importantly, the court in *Burbank* declined to follow the reasoning in *United States v. Gullett,* 713 F.2d 1203 (6th Cir.1983), *cert. denied,* 464 U.S. 1069, 104

---

**3.** The court, of course, rejected Basic's argument that corporate intent should be gleaned from the

acts of upper level officers and managers and not from the conduct of lower level employees.

S.Ct. 973, 79 L.Ed.2d 211 (1984) precisely because the fraudulent scheme by two partners in an accounting firm was carried out in such a way so as "to deceive uninvolved corporate officers and shareholders." *Id.* at 1210. In other words, the actions of the two defendant partners were "inimical" to the corporation, within the meaning of *Automated Medical,* because the actions would have been viewed by the other corporate owners as hostile to their interests.

Following *Burbank* and *Brandon,* the distinction between the corporate entity and its shareholders becomes less sharp and less relevant as the number of shareholders reduces to one. Under the facts of this case, the fictional distinction between corporation and shareholder loses meaning and relevance. When Gallagher chose to act, he acted in service of himself as well as in service of CRI. In the Court's view, the record establishes by more than sufficient evidence that Gallagher, by virtue of his position as CRI's sole shareholder and owner, used the corporation and corporate assets to further the illegal laundering activities for which he was convicted. It is undisputed that there was no other person within the corporation to whom Gallagher's actions could be deemed "inimical." And, in keeping with the relaxation of the sole shareholder/corporate entity distinction in *Burbank* and *Brandon,* the Court concludes that Gallagher's and CRI's interests were identical to such a degree that the corporation may be held criminally liable for Gallagher's illegal acts. *See United States v. Empire Packing Co.,* 174 F.2d 16, 20 (7th Cir.1949) (illegal acts, knowledge, and guilty intent of corporate president imputable to corporation for purpose of proving guilt of corporation).

Mindful that the instant motion seeks avoidance of corporate, rather than individual, criminal liability, the Court's analysis is aided by analogy to the doctrine of "piercing the corporate veil." The Fourth Circuit articulated the inquiry for piercing the corporate veil as follows:

> While accorded great judicial deference, the corporate veil is not sacrosanct. There are circumstances in which courts will treat the corporation and its shareholders as identical. Substantial ownership of a corporation by a single individual is not alone sufficient to pierce the corporate veil. But when substantial ownership is combined with other factors, such as commingling of corporate and personal assets and diversion of corporate funds to the dominant shareholder, a court may peer behind the corporate veil and impose liability on the individual shareholder.

*Cancun Adventure Tours v. Underwater Designer Co.,* 862 F.2d 1044, 1047–48 (4th Cir. 1988), *citing, DeWitt Truck Brokers, Inc. v. Flemming Fruit Co.,* 540 F.2d 681, 685 (4th Cir.1976); *Cunningham v. Rendezvous, Inc.,* 699 F.2d 676, 680 (4th Cir.1983). With the obvious difference that, in this case, the Court holds the corporation, in addition to the individual, criminally liable, the reasoning in *Cancun Adventure,* as applied to the instant facts, prevails in favor of "treating the corporation and its [sole] shareholder[s] as identical."

Finally, the Court must express its concern that, were it to grant CRI's motion, it would sanction the practice of using the subchapter S corporate structure to further the criminal activities of sole shareholders without consequence to the corporation itself. The effect would be to provide criminals with a mechanism to amass and control assets while insulating these assets from the consequences of criminal conviction. Where, as in this case, the identity of interest between sole shareholder and small corporate entity dominates the relationship, and the individual carries out illegal activities through the corporation, it is this Court's opinion that the attributes of incorporation cease to have relevance, and recourse to the corporate legal fiction is inappropriate.

For the foregoing reasons, CRI's motion for judgment of acquittal will be denied.